COMMONWEALTH *vs.* HARRY HARRIS.

Suffolk.    September 19, 1973. — November 2, 1973.

Present:  TAURO, C.J., REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Evidence,* Admissions and confessions, Impeachment of witness. *Practice, Criminal,* Agreement between prosecutor and defendant.

A promise by the prosecuting attorney in a criminal case to defence counsel that certain evidence would not be used must be kept. [238]

Statements made by the defendant in a criminal case may be used to impeach his credibility as a witness despite the fact that they were elicited by the police in violation of *Miranda* safeguards, provided they were not "coerced or involuntary" and their trustworthiness "satisfies legal standards." [238-241]

'Voluntariness" of statements made to police by a person in custody requires a consideration of a complex of values implicated in police questioning, factual circumstances, the psychological impact on such person, evaluation of the legal significance of his reaction, and a determination whether his will has been unfairly overborne and his capacity for self-determination critically impaired. [241-242]

INDICTMENT found and returned in the Superior Court on October 5, 1970.

The case was tried before *Dwyer*, J.

*Robert V. Greco* for the defendant.

*John M. Lynch,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J. The defendant was convicted of arson of a synagogue and of breaking and entering the synagogue in the nighttime with intent'to commit arson. Upon appeal under G. L. c. 278, §§ 33A-33G, the Appeals Court affirmed the convictions. *Commonwealth* v. *Harris,*      Mass. App. Ct.

(1973).[a] We granted further review to consider the single question whether in the circumstances it was error to allow the prosecution to impeach the defendant's testimony by a

---

[a] 295 N. E. 2d 687.

prior inconsistent statement made to the police without com-
pliance with the procedural safeguards required by *Miranda*
v. *Arizona,* 384 U. S. 436 (1966). We follow the decision in
*Harris* v. *New York,* 401 U. S. 222 (1971), and affirm.

We summarize the evidence bearing on the issue before us.
Early in the morning of May 27, 1970, two separate fires
broke out in the Congregation Agudath Israel Synagogue in
Boston. Fire officials gave testimony supporting the conclu-
sion that the fires were incendiary in nature, and a young
man acquainted with the defendant testified to admissions by
the defendant on the afternoon after the fires that he had
participated in setting them and to threats made by the
defendant to prevent the witness from testifying. A number
of witnesses for the defendant contradicted the testimony as
to the defendant's admissions and supported the defendant's
own testimony that he was at home at the time of the fires
and learned about them from a friend.

On cross-examination the defendant was asked about a
conversation with police. The judge interrupted the examina-
tion and ordered a voir dire. On voir dire, a police officer
testified that the defendant was arrested on Saturday, June
27, 1970, sent to the Youth Service Board over the weekend,
and taken to court for a probable cause hearing on Monday
morning. In the lockup downstairs in the court house, the
defendant told the officer that he was wallpapering at a
woman's house on the night of the fire, that he heard of the
fire, and that he watched it. Also on voir dire, the prose-
cuting attorney at the probable cause hearing testified that
he discussed with defence counsel the defendant's oral
statements as to the wallpapering alibi, told defence counsel
that he would not use those statements as part of the Com-
monwealth's case, and made a notation on the defendant's
motion to discover statements made by the defendant that
the Commonwealth had "none it intends to rely upon, or
use." The defendant offered no evidence at the voir dire.

At the conclusion of the voir dire, the judge found that the
defendant's statements were made without the safeguards
guaranteed by the Miranda rule, and that the Common-

wealth so conceded, but he ruled the statements admissible under the principle of *Harris* v. *New York, supra.* He found that no deception had been practised by the Commonwealth, and that the promise of the prosecuting attorney not to use the statements applied only to the probable cause hearing and to the Commonwealth's case in chief at trial.

The trial resumed, and the defendant was cross-examined about the wallpapering alibi. He admitted telling the story except for watching the fire, and said he had lied because he was scared. On redirect examination he testified that he had been interrogated at length on several occasions and did not think anyone would believe he was at home. He formulated the wallpapering story at the Youth Service Center on Sunday with the help of his mother and two women, one of whom was prepared to testify for him at the probable cause hearing but was not called. In rebuttal two police officers gave testimony substantially like that given on voir dire and contradicted the defendant's testimony as to extensive interrogation.

1. The defendant attacks as incredible the judge's finding that the promise of the prosecuting attorney, made at the probable cause hearing, did not extend to cross-examination of the defendant or to rebuttal of his testimony at trial. We insist that the Commonwealth keep its promises in such matters. *Commonwealth* v. *St. John,* 173 Mass. 566, 569-570 (1899). *Commonwealth* v. *Benton,* 356 Mass. 447 (1969). But the promise was oral, the testimony of the prosecuting attorney was uncontradicted, and the Appeals Court did not think it incredible. The evidence sufficiently supported the finding.

2. The defendant's main argument, the focus of our limited grant of further appellate review, is addressed to the question whether *Harris* v. *New York,* 401 U. S. 222 (1971), is the law of Massachusetts. We are asked to hold that art. 12 of the Declaration of Rights of our Constitution provides greater protection to defendants than is provided by the United States Constitution as interpreted in that case. We are free to take this course, and at least one State has done so.

*State* v. *Santiago,* 53 Hawaii 254, 265-267 (1971). Cf. *Butler* v. *State,* 493 S. W. 2d 190, 197-198 (Tex.Crim. App. 1973) (statute); *United States* v. *Jordan,* 44 C. M. R. 44, 47 (U. S. C. M. A. 1971) (Manual for Courts-Martial); see *State* v. *Spunaugle,* 11 Ore. App. 583, 589-590 (1972) (decision of higher court). Like most courts which have considered the point, however, we decline the invitation to adopt the reasoning of the dissenting justices in the Supreme Court of the United States. See *Harris* v. *New York,* 401 U. S. 222, 226 (1971) (dissenting opinion of Brennan, J.); *Riddell* v. *Rhay,* 404 U. S. 974 (1971) (dissenting opinion of Douglas, J.).

In *Harris* v. *New York, supra,* the Supreme Court held that statements to the police elicited in violation of *Miranda* safeguards, if not "coerced or involuntary," and if "the trustworthiness of the evidence satisfies legal standards" (401 U. S. at 224 [1971]), may nevertheless be used to impeach the credibility of a criminal defendant whose testimony in his own behalf is inconsistent with those statements. So far as the exclusionary rule serves the purpose of deterring proscribed police conduct, "sufficient deterrence flows when the evidence in question is made unavailable to the prosection in its case in chief." *Id.* at 225. The privilege of the criminal defendant to testify or to refuse to do so "cannot be construed to include the right to commit perjury." *Ibid.* "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Id.* at 226.

The principal objections to the decision in *Harris* v. *New York, supra,* raised by dissenting justices, are three. First, the decision repudiates the declaration in the *Miranda* case that "statements merely intended to be exculpatory by the defendant" and "used to impeach his testimony at trial" are "incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement." 384 U. S. at 477 (1966). Second, so far as the impeaching evidence bears directly on the elements of the crime charged, its use "fetters" the right

of the defendant to testify in his own defence, cutting down the right by making its assertion costly. See *Walder* v. *United States,* 347 U. S. 62, 65 (1954); *Griffin* v. *California,* 380 U. S. 609, 614 (1965). It is a fiction, in this view, that the prejudicial effect can be overcome by instructing the jury to use the evidence only for impeachment. See *Bruton* v. *United States,* 391 U. S. 123, 129-133 (1968). Third, "the possible use of tainted statements . . . opens the door to a calculated risk by police interrogators." *Riddell* v. *Rhay,* 404 U.·S. 974, 976 (1971) (dissenting opinion of Douglas, J.).

The present case does not require us to enter into this dispute. The defendant contends that he "was warranted in taking the stand on the assumption that" his statements to the police "could not be used," and thus claims the very license to testify without impeachment which was denounced in *Harris* v. *New York, supra.* It is not our province to resuscitate a Supreme Court dictum which has been repudiated by that court. The impeaching evidence in the present case does not tend to prove any element of the crime charged; the judge gave the jury a general limiting instruction with respect to inconsistent statements made by witnesses out of court, but there was no real danger that the statements in issue would be used to prove the truth of the matter stated by the defendant. Finally, the record is entirely barren of any indication that police or prosecutor took any "calculated risk"; there seems rather to have been an inadvertent defect in the *Miranda* warnings given.

Indeed, this case would be a peculiarly unattractive vehicle for a ruling contrary to *Harris* v. *New York, supra.* The defendant admitted in open court that he and others conspired on a Sunday to concoct a false alibi, that he told the false alibi to the police before the probable cause hearing on Monday without disclosing that it was false, and that one of the others was prepared to swear to the false alibi at the hearing. The prosecuting attorney and the defendant's counsel discussed the false alibi, still with no disclosure that it was false. A decision in favor of the defendant by reason of these events would provide a positive incentive to a "calculated

risk'' by defendants in fabricating false alibis.

3. The defendant claims that his statements were involuntary and hence inadmissible even under *Harris* v. *New York, supra.* The Appeals Court ruled that no evidence taken at the voir dire would have supported a finding of involuntariness, that the trial judge was under no obligation to make a finding of voluntariness, since no one raised the issue before him, and that the issue could not be raised for the first time on appeal. We agree with those rulings.

The Appeals Court also ruled that after the voir dire ''any theory of coercion or involuntariness was effectively negated by the defendant in his later testimony before the jury. It appears from his own testimony that his first alibi was worked out deliberately and privately with a friend who was to corroborate it when approached. See *Commonwealth* v. *Pratt,* 360 Mass. 708, 714 (1972); *Commonwealth* v. *Harris,* Mass. App. Ct. at    (1973).[b] We agree.

We stand by our considered statement in *Commonwealth* v. *Kleciak,* 350 Mass. 679, 690 (1966): ''We believe that an involuntary confession does not become any more trustworthy, nor do the methods used to procure it obtain greater standing, because the confession is used to impeach the credibility of the defendant rather than as substantive evidence.'' We assume without deciding that in the circumstances of this case we would not for this purpose distinguish involuntary admissions or involuntary exculpatory statements from involuntary confessions. See *Commonwealth* v. *Wallace,* 346 Mass. 9, 17 (1963). We also recognize that accusation of crime, arrest and custodial interrogation are inherently coercive, and that *Miranda* warnings and even the presence of counsel may not make the defendant's statements ''voluntary'' in the sense used in the law of wills or contracts. See *Miranda* v. *Arizona,* 384 U. S. 436, 457-458, n. 26 (1966); *id.* at 516 (dissenting opinion of Harlan, J.), *id.* at 534-535 (dissenting opinion of White, J.). The ''voluntariness'' we must consider reflects ''an accomo-

[b] 295 N. E. 2d at 692.

dation of the complex of values implicated in police questioning of a suspect." See *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 224-226 (1973). We must determine the factual circumstances, assess the psychological impact on the accused, evaluate the legal significance of his reaction, and determine whether his will has been unfairly overborne and his capacity for self-determination critically impaired. See *Culombe* v. *Connecticut,* 367 U. S. 568, 602-603 (1961).

The defendant points out that he was sixteen years old, that he had been in custody nearly forty-eight hours, and that he was alone with two police officers in the lockup of a court house. He cites *Commonwealth* v. *Cain,* 361 Mass. 224, 228-229 (1972), where somewhat similar facts, coupled with a denial of opportunity to consult an available parent, were held to negate knowing and intelligent waiver of *Miranda* rights sufficient to make inculpatory statements admissible in the Commonwealth's case in chief. We think, however, that in the present case the totality of circumstances shown by the defendant's own testimony establishes that the false alibi was voluntary within the principle of *Harris* v. *New York, supra.*

*Judgments of Superior Court affirmed.*