COMMONWEALTH vs. JAMES EDWARD DOMAINGUE, SR.

Hampden. March 3, 1986. — June 10, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Incest. Rape. Rape-Shield Statute. Evidence,* Relevancy and materiality, Cross-examination, Sexual conduct. *Eavesdropping. Witness,* Impeachment.

General Laws c. 233, § 21B, the rape-shield statute, which, in prosecutions for certain enumerated offenses, operates to exclude evidence of the complainant's reputation for chastity and evidence of any prior sexual conduct with persons other than the defendant, does not apply to a charge of incest. [696-698]

At the trial of indictments for incest, evidence relating to the complainant's prior sexual activity and pregnancy, although not subject to exclusion under the rape-shield statute, was properly excludable under common law principles of evidence, where the proffered evidence was inadmissible to prove lack of credibility or consent and, where, to the extent it was relevant to the issue of bias, the proffered evidence would have been merely cumulative. [698-700]

At the trial of indictments for incest, evidence offered to support the inference that the complainant had a communicable genital infection which the defendant did not contract was irrelevant in view of the complainant's uncontradicted testimony that she did not have sexual contact with the defendant during the period of the infection. [700-701]

Although, at the trial indictments for incest, a tape recording of a conversation between the defendant and the complainant was ruled inadmissible for substantive purposes because the police had failed to comply with the warrant requirements of the Eavesdropping Act, G. L. c. 272, § 99, the defendant could properly be questioned concerning his statements on the recording for purposes of impeaching his credibility as a witness. [701-702]

At the trial of indictments for incest, the complaining witness's inability to identify the exact dates of the alleged incidents, and the fact that her testimony regarding these occurrences varied somewhat from the dates alleged in the indictments, did not render the evidence insufficient to establish beyond a reasonable doubt that the alleged criminal acts had in fact occurred. [702-704]

INDICTMENTS found and returned in the Superior Court Department on March 11, 1983.

The cases were tried before *John F. Moriarty,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John M. Thompson* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant, James Edward Domaingue, Sr., was tried before a jury in Superior Court on eleven indictments for incest, G. L. c. 272, § 17 (1984 ed.); one indictment for forcible rape, G. L. c. 265, § 22 (1984 ed.); three indictments for statutory rape with force, G. L. c. 265, § 22A (1984 ed.); and one indictment for indecent assault and battery, G. L. c. 265, § 13H (1984 ed.). All sixteen of these indictments involved conduct between the defendant and his natural daughter, who was aged fifteen and sixteen at the time of the alleged incidents. In essence, the indictments charged the defendant with maintaining an incestuous relationship with his daughter from approximately May 28, 1982, through January 11, 1983.

The indictment charging indecent assault and battery was dismissed at the close of the Commonwealth's case upon the defendant's motion for a required finding of not guilty. After presentation of all the evidence, the jury returned verdicts of guilty on three indictments charging incest, and verdicts of not guilty on the eight remaining incest charges, and the indictments charging rape and statutory rape.

The defendant appealed the incest convictions, arguing that: (1) the judge erroneously applied the rape-shield law, G. L. c. 233, § 21B (1984 ed.), to the charges of incest against the defendant, and by excluding relevant evidence of specific instances of past sexual conduct of the complainant deprived him of his common law and constitutional right to a fair trial; (2) the judge erred in allowing the prosecution to cross-examine the defendant as to whether the complainant had discussed with him the possibility that he had impregnated her; and (3) there was insufficient evidence before the jury to support the

convictions. We transferred the case here on our own motion, and now affirm.

We summarize the evidence presented by the Commonwealth. The complainant's parents were divorced in 1968 when the complainant was two years old. Between 1968 and 1982, the complainant lived with her mother and did not have substantial contact with her father. In the spring of 1982, however, the complainant began experiencing substantial personal problems both at home and in school. In reaction to these conflicts, the complainant began spending time with her father, both at his home and at his place of business.

The complainant testified that during the second or third week of May, 1982, the defendant took her to the Susse Chalet Motor Lodge in Chicopee and forced her to engage in sexual intercourse with him. The complainant testified that she acceded to her father's demands because she "was afraid of him, he had a knife." According to the complainant, her sexual relationship with her father continued from May, 1982, until January, 1983. These incidents occurred at various places, including the defendant's office, and several area motels. The complainant testified to the dates and locations of their sexual encounters with the aid of her diary, which she stated was a record of her activities.

The complainant's mother testified as to the complainant's birthdate, and stated that the defendant is the complainant's natural father. The mother also testified that on January 13, 1983, the complainant admitted to her mother her allegations about the defendant's conduct. As a result of this conversation the two sought counselling, and ultimately contacted the Department of Social Services and Springfield police.

The Commonwealth presented the testimony of the manager of the Susse Chalet Motor Lodge and the business records of that motel, indicating the dates on which a customer had checked into the motel under the defendant's name. Finally, the Commonwealth called Lieutenant William Fitchet of the Springfield police department, and introduced through him a knife which was confiscated from the defendant on the night he was arrested.

The defense presented evidence in two veins. First, the defendant testified on his own behalf and denied having had sexual contact with his daughter. The defense also presented evidence relevant to the complainant's possible motive to fabricate the charges against the defendant. Adelina DiSantis, the assistant principal of the Commerce High School in Springfield, testified that the complainant had a substantial record of absences from school. Seth Dunn, a licensed social worker and the complainant's counsellor, testified that the complainant's erratic and rebellious behavior was symptomatic of traumatic neurosis. Susan Belanger, a former employee at the defendant's automobile body shop, testified that the complainant had a disagreement with her father in the early winter of 1982, as a result of which the defendant told his daughter that "he didn't want her there, it was causing too much trouble." Based on this evidence, the defense argued to the jury that the complainant was a troubled and alienated teenager who was having "serious personal problems" both at home and at school, and that she fabricated the charges against her father both as a means of getting back at him, and as a means of explaining to her mother the reason for her rebellious behavior.

1. *Evidence of Prior Sexual Conduct of Complainant.*

The defense sought to introduce evidence of prior sexual conduct of the complainant. Specifically, the defendant desired to cross-examine both the complainant and her mother regarding the complainant's prior sexual activity with other men; regarding the complainant's alleged pregnancy and abortion in March of 1982; and regarding the fact that the complainant had contracted a vaginal infection during the summer of 1982, and had requested money from her father in order to pay for medication for herself and two others. The defendant also sought to testify on direct examination regarding his own knowledge of these events. After conducting a voir dire of the witnesses and hearing arguments of counsel, the judge excluded this evidence on the basis of the rape-shield law, G. L. c. 233, § 21B (1984 ed.).[1] The

---

[1] General Laws c. 233, § 21B (1984 ed.), provides: "Evidence of the reputation of a victim's sexual conduct shall not be admissible in any

defendant argues that the rape-shield law does not apply to charges of incest.[2]

General Laws c. 233, § 21B, operates to exclude evidence of a victim's reputation for chastity, and evidence of any prior sexual conduct with persons other than the defendant. The language of the statute is unequivocal in limiting its applicability to any "investigation or proceeding" alleging violations of certain enumerated statutes, including rape, G. L. c. 265, § 22, statutory rape, G. L. c. 265, § 23, and indecent assault and battery, G. L. c. 265, § 13H. The statute makes no provision for criminal proceedings on indictments for incest, G. L. c. 272, § 17. As a matter of statutory construction, the Legislature must be presumed to have intended to limit the application of the statute to the offenses specifically enumerated.[3] See *Simon v. State Examiners of Electricians,* 395 Mass. 238, 244 n.7 (1985) (general principle that "statutory expression of one thing

---

investigation or proceeding before a grand jury or any court of the commonwealth for a violation of sections thirteen B, thirteen F, thirteen H, twenty-two, twenty-two A, twenty-three, twenty-four and twenty-four B of chapter two hundred and sixty-five or section five of chapter two hundred and seventy-two. Evidence of specific instances of a victim's sexual conduct in such an investigation or proceeding shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim; provided, however, that such evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof. If, after said hearing, the court finds that the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim, the evidence shall be admitted; otherwise not. If the proceeding is a trial with jury, said hearing shall be held in the absence of the jury. The finding of the court shall be in writing and filed but shall not be made available to the jury."

[2] Because the defendant was acquitted on the charges of rape and statutory rape, we do not discuss the propriety of the judge's exclusion of the evidence as it relates to these indictments.

[3] The purpose of the Legislature's exclusion of incest from G. L. c. 233, § 21B, is not immediately apparent, considering that proceedings on charges of statutory rape — where consent also is not an element of the crime — are covered by the statute. Despite this inconsistency, we decline to read language into an unambiguous statute which the Legislature has not seen fit to embody therein. See *Rambert* v. *Commonwealth,* 389 Mass. 771, 773 (1983).

is an implied exclusion of other things omitted from the statute"); *County of Middlesex* v. *Newton,* 13 Mass. App. Ct. 538, 542 (1982). The defendant is therefore correct in his assertion that the rape-shield statute should not have been applied to exclude evidence relevant to his defense of the incest charges.[4] However, we conclude that there was no error in the circumstances of this case, because the proffered evidence was excludable under common law principles of evidence, even though not properly excluded under G. L. c. 233, § 21B. See *Weidman* v. *Weidman,* 274 Mass. 118, 125 (1931) ("[a] correct decision will be sustained even though the ground stated for it may be unsound"); *Doeblin* v. *Tinkham Dev. Corp.,* 7 Mass. App. Ct. 720, 722 (1979) (same). See also *Sabatinelli* v. *Butler,* 363 Mass. 565, 571 (1973) (harmless error in exclusion of evidence on improper ground).

A. *Evidence of prior sexual activity and pregnancy.*

The section of the rape-shield statute, G. L. c. 233, § 21B, which bars the admission of evidence of specific instances of sexual conduct of the victim, is essentially a reflection of the preexisting common law rule. *Commonwealth* v. *Grieco,* 386 Mass. 484, 487 (1982). *Commonwealth* v. *Buckley,* 6 Mass. App. Ct. 922 (1978). At common law, evidence of the prior sexual conduct of the victim with persons other than the defendant is inadmissible for the purpose of impeaching the victim's credibility. *Commonwealth* v. *Manning,* 367 Mass. 605, 610 (1975). *Commonwealth* v. *Gardner,* 350 Mass. 664, 668 (1966). Prior unrelated instances of sexual conduct also are inadmissible for the purpose of proving consent to intercourse with the defendant. *Commonwealth* v. *Gouveia,* 371 Mass. 566, 570 (1976). See *Grieco, supra* at 487. These evidentiary

---

[4] The defendant contends that since the rape-shield statute applies to charges of rape and statutory rape, but not to charges of incest, these latter indictments should have been severed and tried separately. Because we conclude that the evidence in question was properly excluded even as it related to defense of the incest charges, severance was not required in this case. If a case were presented in which evidence of prior sexual conduct was admissible in defense of certain indictments, but excludable in defense of others, the issue of severance would be a proper matter for the discretion of the trial judge.

principles have been applied not only to charges of rape, but also to charges of assault and battery, sodomy, and unnatural and lascivious acts. See *Manning, supra* at 605; *Gardner, supra* at 664. They reflect a judicial determination that prior sexual acts are simply not relevant to the victim's trustworthiness, or to consent to sexual activity on a particular occasion.

Nonetheless, evidence of specific instances of prior sexual conduct, while inadmissible to prove lack of credibility or consent, may be admissible to show the bias of the complainant. The defendant is entitled to reasonable cross-examination for the purpose of showing the bias of the witness and possible motive for fabricating the allegations against him. *Commonwealth* v. *Cheek,* 374 Mass. 613, 615 (1978). See *Commonwealth* v. *Bohannon,* 376 Mass. 90, 93 n.3 (1978). Cf. *Commonwealth* v. *Joyce,* 382 Mass. 222, 229-231 (1981) (in certain circumstances, evidence of prior acts admissible under rape-shield statute to show complainant's bias). In this case, the defendant argued that evidence of the complainant's sexual activity with persons other than the defendant, as well as her alleged pregnancy and abortion in March of 1982, were relevant to her bias against the defendant. According to the defendant's "theory" of the case, the complainant began experiencing problems at home due to her mother's knowledge of her promiscuity. In March of 1982, the complainant became pregnant by one of her boyfriends, and was forced by her mother to have an abortion rather than marry the father of the child. This traumatic experience caused the complainant to rebel against her mother, and to turn to her father for guidance and support. When the complainant's relationship with her father deteriorated in January of 1983, the complainant fabricated the charges against him as a method both of "getting back" at him, and of regaining the acceptance and support of her mother.

The complainant's prior sexual experiences, including her pregnancy and abortion, are only marginally relevant to this theory of bias. The judge may properly exclude evidence where the danger of unfair prejudice outweighs its probative worth. *Commonwealth* v. *Sherry,* 386 Mass. 682, 693 (1982). See

*Commonwealth* v. *D'Agostino,* 344 Mass. 276, 279 (1962); Fed. R. Evid. 403. There was no error.

Moreover, the defendant was able to establish the potential bias of the complainant without introducing evidence of her prior sexual history. See *Commonwealth* v. *Frey,* 390 Mass. 245, 250-252 (1983); *Commonwealth* v. *Elder,* 389 Mass. 743, 751 (1983) ("Where evidence of bias is available by other means, no evidence of the complainant's prior sexual history should be admitted"). Cf. *Commonwealth* v. *Porter,* 384 Mass. 647, 658 (1981) (evidence of bias merely cumulative). There was ample evidence on the record of the complainant's rebelliousness and problems with her mother. There were also numerous references during the testimony of the witnesses to the complainant's various "boyfriends." Defense counsel was able to state in closing argument, without objection, that the complainant was a "socially mature individual," and was allowed to refer to her "promiscuity." Finally, a defense witness testified to an argument between the complainant and the defendant prior to the time that she first made the allegations against him. There was thus substantial evidence from which the defendant was able to argue his bias theory to the jury, and the judge did not err in excluding evidence of past sexual conduct. The defendant was not deprived of his constitutional right to a fair trial, and to confront the witnesses against him, by the exclusion of this evidence. See *Elder, supra* at 750-751. Cf. *Chambers* v. *Mississippi,* 410 U.S. 284, 294 (1973).

B. *Evidence of infection.*

The defendant filed a motion on the fourth day of trial requesting permission to cross-examine the complainant regarding a vaginal infection which she had contracted during July of 1982. The judge conducted a voir dire of the complainant, and thereafter ruled that the defendant would be allowed to ask the witness about her infection, but would not be allowed to inquire into the source of the infection, or whether she had procured medicine for any of her boyfriends. Presumably this ruling was motivated by the rape-shield statute, and the judge's desire to avoid any reference to the complainant's unrelated sexual conduct.

The defendant argues that the fact that the complainant requested money from him in order to procure medicine for two of her male friends is relevant to the critical issue of the defendant's sexual conduct with the complainant. Evidence that the complainant procured medicine for other individuals would be probative of the fact that the infection was communicable. If the complainant had acquired a communicable infection which the defendant had not contracted, this would support the inference that the defendant did not have sexual access to the complainant.

There was no error. First, the complainant testified that she was on Cape Cod for the "bulk" of July, and that she did not have sexual contact with her father during the period of infection. There was no evidence to the contrary. The entire subject of vaginal infection was therefore irrelevant. Moreover, the fact that the infection was communicable would be an impermissibly speculative inference from the fact that the complainant had requested money from the defendant for medicine for her friends. In order to prove the medical nature of the infection, the defendant would need to call either the doctor who treated the complainant, or the friends who allegedly contracted the infection. This was suggested to the defendant by the trial judge in his ruling on the issue, and defense counsel stated, "I don't think I will bring it in." The entire line of questioning was then abandoned. Any objection to the judge's ruling on this issue was therefore waived by the defendant.

2. *The Conversation Between Defendant and Complainant.*

The prosecutor proposed to offer evidence that on February 28, 1983, the defendant and the complainant discussed the possibility that he had impregnated her. This conversation occurred after the complainant had revealed her allegations to the police. The complainant and the defendant met at a restaurant. Unbeknownst to the defendant, the complainant was "wired" with an electronic listening device, and the conversation was monitored by a police officer stationed outside of the restaurant. The prosecutor proposed to offer the tape recording of this conversation as evidence that the defendant had engaged in sexual relations with his daughter. The judge ruled that the

tape was inadmissible for this purpose, because the police had failed to comply with the warrant requirements of the Eavesdropping Act, G. L. c. 272, § 99 (1984 ed.). However, the judge ruled that the statements of the defendant during this conversation could be used for impeachment purposes, if the defendant took the stand and denied having had sexual intercourse with his daughter. The defense argues that it was error for the judge to permit this method of impeachment.

The defendant testified that he had never had sexual relations with the complainant. On cross-examination, the prosecutor asked him, over defense objection and motion to strike, "Did you talk to your daughter about the possibility she might be pregnant by you?" The defendant answered, "No." The prosecutor showed the defendant a transcript of the taped conversation, and asked him if that refreshed his recollection. The defendant answered, "No." That was the end of the inquiry. The transcript was not introduced in evidence or shown to the jury.

Assuming, but not deciding, that the judge was correct in his ruling that the taped conversation must be excluded in the first instance, there was no error in allowing this line of questioning. The defendant's conversation with his daughter could reasonably be construed as a prior statement inconsistent with his current denial of sexual intercourse. A witness may be impeached on cross-examination by reference to prior inconsistent statements which are not admissible substantively. See *Commonwealth* v. *Harris,* 364 Mass. 236, 238-240 (1973), citing *Harris* v. *New York,* 401 U.S. 222, 224 (1971) (statements elicited in violation of *Miranda* safeguards may be used for impeachment if voluntary and sufficiently trustworthy).

3. *Sufficiency of Evidence.*

The defendant contends that the evidence against him is insufficient to support the convictions for incest, and that the judge erred in denying his motions for required findings of not guilty at the close of the Commonwealth's case. Essentially, the defendant argues that the uncertainty of the complainant's testimony in pinpointing the exact dates of the alleged incidents rendered the evidence insufficient to establish beyond a reasonable doubt that the alleged criminal acts had in fact occurred.

The indictments on which the defendant was convicted charged him with incest "on or before the thirty-first day of August," 1982; "on the twelfth day of October," 1982; and "on or before the tenth day of December," 1982.[5] The complainant's testimony regarding these occurrences varied somewhat from the dates alleged in the indictments. The complainant testified that she had sex with her father six or seven times in August "before school started." The complainant testified that she had sexual relations with her father "probably towards the end of the month" in October. Finally, the complainant testified that she had sex with her father "sometime before Christmas" at a Chicopee motel. On cross-examination, the complainant testified that she "didn't remember exactly" the dates of these occurrences.

The sole question is whether the evidence, considered in the light most favorable to the Commonwealth, was sufficient to persuade a rational trier of fact of each of the elements of the crimes charged beyond a reasonable doubt. *Commonwealth* v. *Sherry,* 386 Mass. 682, 687 (1982). *Commonwealth* v. *Casale,* 381 Mass. 167, 168 (1980). The essential elements of the crime of incest are sexual intercourse with a person within a "degree of consanguinity" wherein marriage is prohibited. G. L. c. 272, § 17 (1984 ed.). See *Commonwealth* v. *Lynes,* 142 Mass. 577, 581 (1886). The date or time of the alleged offense is not an element of the crime. See *Commonwealth* v. *King,* 387 Mass. 464, 467 (1982) (statutory rape). There was substan-

---

[5] Before trial, the defendant moved for bills of particulars on the charges of rape and statutory rape, requesting more information as to the time and place of these alleged occurrences. The judge denied this motion. The defendant argues that the denial of his motion for bills of particulars was error, in so far as the language on the indictments (many of which read "on or about" or "on or before" certain dates) was insufficient to enable the defendant to prepare an adequate defense. We need not reach this issue, as the defendant did not file a motion for bills of particulars on the indictments charging incest, the only charges upon which he was convicted. We note, however, that the incest indictments complied with the statutory requisites, G. L. c. 277, § 79 (1984 ed.), and that the decision to allow a bill of particulars rests within the sound discretion of the trial judge. See *Commonwealth* v. *Baker,* 368 Mass. 58, 76-77 (1975).

tial evidence of both the complainant's sexual[6] and familial relationship with the defendant. There was no error in submitting the case to the jury.

*Judgments affirmed.*

---

[6] Although the complainant testified generally about "having sex" or "sexual intercourse" with her father, on at least two occasions during her testimony she also testfied more specifically that "[h]e put his penis into my vagina." There was thus sufficient evidence of penetration to submit the case to the jury.