COMMONWEALTH *vs.* ALAN FINI.

Hampden. May 3, 1988. — December 14, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Eavesdropping. Search and Seizure*, Electronic surveillance, Expectation of privacy. *Constitutional Law*, Search and seizure, Privacy. *Privacy. Evidence*, Impeachment of witness. *Witness*, Impeachment.

In a criminal case, tape recordings of conversations that took place in and around the defendant's home between the defendant and an informant, obtained through warrantless electronic surveillance in violation of the defendant's rights under art. 14 of the Massachusetts Declaration of Rights, were held not admissible to impeach the defendant's testimony either directly with respect to the crimes charged or with respect to collateral matters. [569-574] NOLAN, J., dissenting, with whom LYNCH, J., joined.

INDICTMENTS found and returned in the Superior Court Department on July 18, 1986.

A pretrial motion was heard by *John F. Murphy, Jr.*, J., and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Joel N. Rosenthal* of Florida (*William J. O'Grady* with him) for the defendant.

*Charles E. Dolan*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant is charged with several drug offenses, including trafficking in cocaine, unlawful distribution of cocaine, and unlawful distribution of marihuana. Before trial, the Commonwealth moved in limine for a determination that certain tape recordings of conversations between the defendant and an informant would be admissible to impeach the defendant's testimony. The Commonwealth conceded, and now concedes, that the transmissions and recordings violated

the defendant's rights under art. 14 of the Massachusetts Declaration of Rights, and that the recordings would be inadmissible in the Commonwealth's case-in-chief.

The judge found that the conversations took place "in or around the home of the defendant." On the occasion of each conversation, unbeknownst to the defendant, the informant had been equipped with an electronic transmitting device, and the transmitted conversation was recorded by police officers. The tapes include conversations during which the defendant sold cocaine to the informant, as well as statements by the defendant concerning collateral matters, that is, matters other than those for which the defendant is under indictment but which nevertheless might impeach his testimony.

The judge ruled that the tapes would be admissible for impeachment purposes. However, pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), he reported the case to the Appeals Court to present the following questions: "(1) Did the Court rule correctly in allowing the Commonwealth to use the recorded conversations with the defendant involving collateral matters for impeachment purposes, after an appropriate voir dire? (2) Did the Court rule correctly in allowing the Commonwealth to use the recorded conversations with the defendant which dealt directly with the crime charged, for impeachment purposes, after an appropriate voir dire?" We transferred the case to this court on our own initiative. We answer the reported questions, "No; the Commonwealth may not use the recorded conversations for impeachment purposes irrespective of whether the conversations dealt with collateral matters or directly with the crimes charged."

Warrantless electronic surveillance of conversations with the consent of just one of the parties does not violate the Constitution of the United States. *United States* v. *White*, 401 U.S. 745, 751 (1971). However, such surveillance, at least of conversations occurring in private homes, in the absence of evidence that the participants intended the contents to be broadcast, does violate art. 14 of the Massachusetts Declaration of Rights.[1]

---

[1] The Commonwealth makes no contention that a distinction should be made between conversations that took place inside the defendant's home and those that occurred on the defendant's premises but outside the house.

*Commonwealth* v. *Blood*, 400 Mass. 61, 68-71 (1987). Further-more, because such surveillance violates art. 14, the tapes and any testimony derived from them or from the transmissions is inadmissible in the Commonwealth's case-in-chief. *Id.* at 77.[2]

The sole issue in this case is whether, if the defendant should testify, the Commonwealth may introduce relevant portions of the tapes to impeach his testimony. The Supreme Court held in *Harris* v. *New York*, 401 U.S. 222, 224-226 (1971), that a defendant's statements made to the police without coercion, but elicited in violation of the safeguards of Fifth Amendment rights mandated by *Miranda* v. *Arizona*, 384 U.S. 436 (1966), may nevertheless be admitted to impeach the defendant's testimony. *Harris* holds that it is immaterial whether the impeachment relates to collateral matters or to matters bearing more directly on the crimes charged. *Id.* at 225. The court reasoned that "sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief," *id.* at 225, and that "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Id.* at 226.

In *Oregon* v. *Hass*, 420 U.S. 714 (1975), after a police officer had given the defendant the *Miranda* warnings, the defendant admitted to the officer that he had stolen two bicycles. The defendant and the officer then departed in a cruiser for the place where the defendant had left one of the bicycles. En route, the defendant stated that he would like to telephone his attorney. The officer replied that he could do so after their return to the station. Thereafter, the defendant pointed out a place where the bicycle was found. At trial, the defendant's statements after his request for counsel were admitted for impeachment purposes. The Oregon Court of Appeals reversed the defendant's conviction and the Supreme Court of Oregon affirmed the Court of Appeals. Relying on *Harris* v. *New York*, *supra*, the United States Supreme Court reversed the

---

[2] The informant himself may testify concerning the conversations in which he took part because that testimony would not be the fruit of a constitutional violation. *Commonwealth* v. *Blood*, *supra* at 78.

Supreme Court of Oregon. *Harris* had involved defective *Miranda* warnings, a violation of a prophylactic rule. *Hass* involved a failure to afford a defendant his full constitutional right to counsel. The Court in *Hass* saw "no valid distinction" between the two situations, *id.* at 722, and declared that "the balance [between the value of deterrence and the value of impeachment] was struck in *Harris*, and [the Court was] not disposed to change it." *Id.* at 723. The Court further observed: "If, in a given case, the officer's conduct amounts to abuse, that case, like those involving coercion or duress, may be taken care of when it arises measured by the traditional standards for evaluating voluntariness and trustworthiness." *Id.*

Subsequently, in *United States* v. *Havens*, 446 U.S. 620, 626-627 (1980), the Supreme Court followed its reasoning in *Harris* and *Hass*, and concluded that evidence inadmissible in the government's case-in-chief because obtained as a result of a search and seizure in violation of the Fourth Amendment is nevertheless admissible to impeach the defendant's testimony. The Court reaffirmed its position that the "incremental further- ing" of the objectives of the exclusionary rules by forbidding impeachment by means of evidence unlawfully obtained was insufficient to "permit or require that false testimony go unchal- lenged." *Id.* at 627.

Of course, this court is free to hold that art. 14 of the Massachusetts Declaration of Rights provides greater protec- tion to defendants than is provided by the United States Con- stitution as interpreted by the Supreme Court. *Commonwealth* v. *Harris*, 364 Mass. 236, 238 (1973). Until now, however, we have not held that evidence unlawfully obtained is unavail- able to the Commonwealth to impeach a defendant's testimony, although we have not foreclosed that possibility in an appro- priate case, and we have not been required to consider the question in the context of a case involving, as this one does, an unreasonable search and seizure in violation of art. 14.

*Commonwealth* v. *Harris, supra*, like *Harris* v. *New York, supra*, involved the question of admissibility for impeachment purposes of a defendant's uncoerced statement made to the police without compliance with the safeguards required by

*Miranda* v. *Arizona, supra.* We followed *Harris* v. *New York,* and held the evidence admissible as to the defendant's credibility. *Id.* at 239-240. We noted that "[t]he impeaching evidence in [that] case [did] not tend to prove any element of the crime charged," that is, it was only collateral, that "there was no real danger that the statements in issue would be used to prove the truth of the matter stated by the defendant," and that that "case would be a peculiarly unattractive vehicle for a ruling contrary to *Harris* v. *New York." Id.* at 240.

In *Commonwealth* v. *Mahnke,* 368 Mass. 662 (1975), cert. denied, 425 U.S. 959 (1976), the police obtained an incriminating statement from the defendant. Before obtaining the statement, the police knew, but did not inform the defendant, that his lawyer had been trying to speak to a police officer who had been significantly involved in the investigation of the crime with which the defendant was charged. Also, the police did not inform the lawyer that a custodial interrogation of his client was in progress. We held that the trial judge had properly ruled that the statement would be admissible to impeach the defendant if he were to testify. We were "not persuaded that factual distinctions between [that] case and *Harris* and *Hass* [were] sufficient to shift the balance struck in the two Supreme Court cases between impeachment of perjurious testimony and deterrence of improper police conduct." *Id.* at 696. We observed that the police had given the defendant the Miranda warnings, that the defendant was aware that his parents had engaged an attorney to represent him, and that the defendant could have halted the inquiry at any time and requested his attorney. *Id.* at 697. Thus, in *Mahnke,* as well as in *Commonwealth* v. *Harris, supra,* in arriving at a proper balance between the State's interest in impeachment and its interest in deterrence of police misconduct, we focused on the kind of unconstitutional intrusion that had occurred as well as on the likely impact on the defendant of the evidence obtained thereby. In neither case did we announce that evidence obtained as a result of constitutional violation is always admissible to impeach the defendant's testimony, nor did we announce an intention to limit art. 14's protection to that provided by the United States Constitution as interpreted by the United States Supreme Court.

One other case decided by this court requires at least brief discussion. *Commonwealth* v. *Domaingue*, 397 Mass. 693 (1986), involved indictments for incest, forcible rape, and statutory rape. The trial judge ruled that a warrantless electronic recording of a conversation at a restaurant between the defendant and the complainant, of which the defendant was unaware, was inadmissible in the Commonwealth's case-in-chief because it violated G. L. c. 272, § 99 (1986 ed.), but was admissible to impeach the defendant if he took the stand. The defendant testified, and on cross-examination the prosecutor asked him whether he had discussed with the complainant the possibility that she had become pregnant by him. The defendant answered, "[N]o." The prosecutor then showed him a transcript of the taped conversation, and asked him if that refreshed his recollection. The defendant said, "[N]o." The transcript was not introduced in evidence or shown to the jury. *Id.* at 702.

"Assuming, but not deciding, that the judge was correct in his ruling that the taped conversation must be excluded in the first instance," we said in *Domaingue*, at 702, "there was no error in allowing this line of questioning. . . . A witness may be impeached on cross-examination by reference to prior inconsistent statements which are not admissible substantively. See *Commonwealth* v. *Harris*, 364 Mass. 236, 238-240 (1973), citing *Harris* v. *New York*, 401 U.S. 222, 224 (1971) (statements elicited in violation of *Miranda* safeguards may be used for impeachment if voluntary and sufficiently trustworthy)." We receive little help in the present case from our decision in *Domaingue* because, in that case, the tape was not admitted in evidence and therefore the discussion about it was dictum, and also because the taped discussion did not take place at a private home as it did here and in the later case of *Commonwealth* v. *Blood*, 400 Mass. 61 (1987). There was no suggestion in *Domaingue* that the transmission and recording of the conversation without the defendant's consent violated art. 14 or any other constitutional right.

In arriving at our conclusion in *Commonwealth* v. *Blood*, *supra*, that surreptitious warrantless electronic transmission and recording of conversational interchange in a private home

violate art. 14, and that no evidence derived therefrom may be admitted in the Commonwealth's case-in-chief, we reasoned that "it is not just the right to a silent, solitary autonomy [of the thoughts and emotions] which is threatened by electronic surveillance: It is the right to bring thoughts and emotions forth from the self in company with others doing likewise, the right to be known to others and to know them, and thus to be whole as a free member of a free society." *Id.* at 69. "The instruments of electronic eavesdropping are peculiarly adapted to search our thoughts and emotions. Thus, these devices are peculiarly valuable to those charged with policing crimes . . . . But, because the peculiar virtues of these techniques are ones which threaten the privacy of our most cherished possessions, our thoughts and emotions, these techniques are peculiarly intrusive upon that sense of personal security which art. 14 commands us to protect." *Id.* at 70-71.

Given the magnitude of the unconstitutional intrusion accomplished by electronic eavesdropping in and about a private home, such as took place in this case, we conclude that half measures of deterrence are not enough. Surely, if we accept the validity of the premise that the exclusion from the government's case-in-chief of evidence obtained by unconstitutional means tends to deter that misconduct, a premise which this court has repeatedly accepted, see *Commonwealth* v. *Bishop*, 402 Mass. 449, 451 (1988); *Commonwealth* v. *Blood, supra* at 77; *Commonwealth* v. *Ford*, 394 Mass. 421, 426 (1985), it is also reasonable to conclude that the exclusion of such evidence for all purposes will act as a still further deterrent. Such a rule would tend to discourage the gathering of such evidence based on the hope that it will reach the jury in one way if not in another. Therefore, we answer the reported questions, "No; the Commonwealth may not use the recorded conversations for impeachment purposes irrespective of whether the conversations dealt with collateral matters or directly with the crimes charged."[3] Of course, as in *Commonwealth* v.

---

[3] The rule adopted today applies to the defendant in this case and to the defendants in all cases now pending on direct appeal where the record is

*Blood, supra,* the informant himself may testify to the conversations. See note 2, *supra.*

The case is remanded to the Superior Court for further proceedings.

*So ordered.*

NOLAN, J. (dissenting, with whom Lynch, J., joins). What is so unreasonable about permitting the Commonwealth to confront the witness with prior contradictory statements to impeach credibility though such statements may not be introduced by the Commonwealth in its case-in-chief? A witness should not be made comfortable by the knowledge that he can say what he wants under oath regardless of its falsity without running the risk of impeachment. This is a none too subtle encouragement of perjury.

For this reason and for reasons expressed in *Commonwealth* v. *Blood,* 400 Mass. 61, 78-81 (1987) (Nolan, J., dissenting), I dissent.

adequate to raise the issue. *Commonwealth* v. *Blood, supra* at 77 n.18, and cases cited.