James E. DOMAINGUE, Sr., Petitioner,

v.

David J. MacDONALD, Respondent.

Civil Action No. 93–40011–NMG.

United States District Court,
D. Massachusetts.

Oct. 10, 1997.

---

James E. Domaingue, Pro Se.

Matthew S. Robinowitz, Fitchburg, MA, for Petitioner.

William J. Meade, Asst. Atty. Gen., Boston, MA, for Respondent.

### MEMORANDUM AND ORDER

GORTON, District Judge.

On August 24, 1983, petitioner James E. Domaingue, Sr. was convicted on three "indictments" of incest.[1] The Massachusetts Supreme Judicial Court ("SJC") affirmed Mr. Domaingue's convictions. *Commonwealth v. Domaingue*, 397 Mass. 693, 493 N.E.2d 841 (1986). On January 13, 1993, Mr. Domaingue filed the instant petition for a writ of habeas corpus. The respondent moved to dismiss the petition based upon Mr. Domaingue's failure to exhaust his state court remedies. On July 2, 1997, Mr. Domaingue filed an amended petition which omitted the unexhausted claims.

### I. *Procedural History*

On March 11, 1983, a Hampden County Massachusetts grand jury returned 38 indictments (Nos. 83–799 through 83–836) against Mr. Domaingue for forcible rape (13 indictments), rape of a child under the age of 16 (three indictments), incest (18 indictments), indecent assault and battery (two indictments), and for contributing to the delinquency of a minor (two indictments). On August 15, 1983, Mr. Domaingue was tried in the Massachusetts Superior Court before a jury, on: 11 indictments for incest, one for forcible rape, three indictments for statutory rape, and one indictment for indecent assault and battery. All 16 of these indictments involved conduct between Mr. Domaingue and his natural daughter ("the Daughter"), who was fifteen and sixteen at the times of the alleged incidents. In essence, the indict-

---

**1.** Consistent with state law terminology, the term "indictments" is used throughout interchange-ably with the terms "counts" and "charges."

ments charged Mr. Domaingue with maintaining an incestuous relationship with the Daughter from approximately May 28, 1982, through January 11, 1983.

The jury returned guilty verdicts on three of the incest indictments but acquitted Mr. Domaingue on the remaining charges. On August 25, 1983, Mr. Domaingue was sentenced to three concurrent terms of five to ten years at M.C.I.-Cedar Junction to take effect from and after the sentences Mr. Domaingue was then serving for unrelated convictions. The SJC subsequently affirmed the convictions for incest and Mr. Domaingue filed the instant petition for a writ of habeas corpus.

## II. *Background*

The Daughter's parents were divorced in 1968 when she was two years old. Between 1968 and 1982, the Daughter lived with her mother and did not have substantial contact with her father. In the spring of 1982, the Daughter began experiencing personal problems and, in reaction, began spending time with her father.

The Daughter testified that during the 2nd or 3rd week in May, 1982, Mr. Domaingue took her to the Susse Chalet Motor Lodge in Chicopee and forced her to have sex with him. She testified that she acceded because she was afraid of her father, "he had a knife." According to the Daughter, their sexual relationship continued from May, 1982, until January, 1983. She testified to the dates and locations of their sexual encounters with the aid of her diary.

The Daughter's mother testified as to her birth date and stated that Mr. Domaingue was the Daughter's natural father. The mother also testified that on January 13, 1983, the Daughter told the mother about her sexual relationship with her father. The Commonwealth presented testimony of the manager of the Susse Chalet Motor Lodge and business records of that motel, indicating the dates on which a customer had checked into the motel under Mr. Domaingue's name. Finally, the Commonwealth called Lieutenant William Fitchet of the Springfield police department, and introduced through him a knife which was confiscated from Mr. Domaingue on the night he was arrested.

Mr. Domaingue presented a two-pronged defense. First, he testified and denied having a sexual relationship with the Daughter. Second, he presented evidence relevant to the Daughter's possible motive to lie. He contended that the Daughter was a troubled and alienated teenager who was having serious personal problems at home and at school and that she fabricated charges against him as a means of getting back at him and as a means of explaining to her mother the reason for her rebellious behavior.

## III. *Analysis*

Mr. Domaingue presents five arguments in support of his petition for habeas corpus. He argues that 1) the evidence was insufficient as a matter of law to convict him of incest, 2) the trial judge's evidentiary ruling a) violated his Confrontation Clause rights, b) his right to present evidence in his own defense and c) his right to a fair trial, and 3) the trial judge's refusal to sever the incest charges from the forcible rape charges violated his right to Due Process.

### A. *Sufficiency of Evidence*

When analyzing a sufficiency of evidence claim in a habeas proceeding, the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Wright v. West,* 505 U.S. 277, 284, 112 S.Ct. 2482, 2485–2486, 120 L.Ed.2d 225 (1992), *quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). In addition, the determination of the SJC that the evidence in this case is constitutionally sufficient is entitled to deference by this federal court. *See Jackson,* 443 U.S. at 323, 99 S.Ct. at 2791.

Mr. Domaingue was convicted of incest in violation of M.G.L. c. 272, § 17 (1984 ed.). The essential elements of the crime are sexual intercourse with a person within a

degree of consanguinity wherein marriage is prohibited. *See Commonwealth v. Lynes,* 142 Mass. 577, 581, 8 N.E. 408 (1886).

■ Mr. Domaingue argues that the Daughter's testimony was insufficient to prove intercourse beyond a reasonable doubt because she used or responded affirmatively to phrases such as "sex relations," "anything like that" and "what you told us before" rather than explicitly stating that on each occasion she and her father engaged in intercourse. Viewing the evidence in the light most favorable to the prosecution, however, a rational trier of fact could have found that Mr. Domaingue and the Daughter maintained an incestuous relationship from May, 1982, through January, 1983. When the Daughter first testified that she had sex with her father, she explained that this meant "he put his penis in my vagina." *See Commonwealth v. Titus,* 32 Mass.App.Ct. 216, 224, 587 N.E.2d 800 (1992) (jury could reasonably infer penetration from Daughter's repeated use of term "sex").

■ Mr. Domaingue also argues that the Daughter's testimony should not be considered in determining the sufficiency of the evidence. He argues that the uncertainty and inconsistencies of the Daughter's testimony regarding the exact dates and locations of the alleged incidents renders that testimony fatally at variance with the indictments. He attempts to analogize the case at bar with *Dunn v. United States,* 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), where the Supreme Court overturned a Court of Appeals because of a discrepancy between the basis upon which the jury returned its verdict and that upon which the Court of Appeals sustained the conviction. *Id.* at 107, 99 S.Ct. at 2194. The discrepancy did not involve uncertainty concerning the date of the alleged conduct, but rather, which of two distinct events constituted the evidence of the crime.

In the case at bar, the evidence the jury relied upon in returning its conviction of Mr. Domaingue sufficiently matched the allegations in the indictments. The indictments provided Mr. Domaingue with sufficient notice of the allegations to prepare a defense. The Daughter's uncertainty concerning exact dates and locations may have raised a credibility issue, but the consideration of such testimony does not amount to a constitutional error.

**B.** *The Trial Court's Evidentiary Rulings*

■ A writ of habeas corpus will not ordinarily lie to correct an alleged error in a state court's evidentiary ruling. To rise to constitutional magnitude, an error must so infuse a trial with inflammatory prejudice as to render a fair trial impossible. *Allen v. Snow,* 635 F.2d 12, 15 (1st Cir.1980), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981).

1. *The Confrontation Clause and Excluded Evidence*

Mr. Domaingue argues that limits on his ability to cross-examine witnesses violated his right to confront them and that limits on his own testimony violated his right to testify on his own behalf. Mr. Domaingue sought, through his own testimony and through cross-examination of the Daughter and her mother, to introduce evidence regarding 1) the Daughter's prior sexual promiscuity, 2) her alleged pregnancy and abortion in March, 1982 and 3) the fact that she contracted a vaginal infection during the summer of 1982. The trial judge excluded such evidence on the basis of the Massachusetts Rape–Shield Law, M.G.L. c. 233, § 21B (1984 ed.). The SJC concluded that the rape shield law did not apply to incest, but held that it was proper for the trial judge to exclude the subject evidence on the basis of common law principles. *Domaingue,* 397 Mass. at 698, 493 N.E.2d 841.

■ Respondent argues that the trial court's evidentiary mistake does not amount to a violation of petitioner's right of confrontation because Mr. Domaingue was able to conduct a cross-examination of the witness and to introduce evidence regarding his defense theory. The right to confront witnesses is "subject always to the broad discretion of the trial judge" to control the scope of cross-examination. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

The law regarding restrictions on the scope of cross-examination is well-settled in this Circuit ... Once the defendant has been afforded a reasonable opportunity to question a witness' veracity and motivation, the trial judge enjoys broad discretion in determining the scope and extent of cross-examination.

*United States v. Garcia–Rosa,* 876 F.2d 209, 237 (1st Cir.1989).

■ When a witness's credibility is at issue, the trial court may impose limits on cross examination without violating a defendant's confrontation right so long as the court grants the defendant sufficient leeway to establish a reasonably complete picture of the witness's bias and motivation to fabricate. *United States v. Laboy–Delgado,* 84 F.3d 22, 28 (1st Cir.1996). Mr. Domaingue contends that the excluded evidence was necessary to establish the Daughter's motivation to fabricate the charges against him. The respondent replies that there was ample evidence on the record of the Daughter's rebelliousness and problems with her mother, as well as references to her various boyfriends. The respondent also points out that a defense witness testified to an argument between the Daughter and Mr. Domaingue prior to the time that she first made allegations against him.

■ The SJC found that the Daughter's prior sexual conduct was only "marginally relevant" to Mr. Domaingue's theory of bias and that there was substantial evidence presented at the trial to establish the Daughter's possible bias. *Domaingue,* 397 Mass. at 699, 493 N.E.2d 841. The SJC's conclusions are entitled to a "presumption of correctness." *Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983). In order to set aside the state court's conclusions, Mr. Domaingue must demonstrate that they lack fair support in the record. *See Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983). He has not satisfied his burden.

### 2. *Impeachment Evidence*

■ Mr. Domaingue also argues that he was improperly impeached with a prior inconsistent statement. At trial, the prosecutor proposed to offer evidence that on February 28, 1983, Mr. Domaingue and the Daughter discussed the possibility that he had impregnated her. This conversation allegedly occurred at a restaurant while the Daughter wore an electronic listening device. The judge ruled that the tape, obtained without a warrant, was inadmissible for its truth, but could be used to impeach Mr. Domaingue if he took the stand and denied having sexual intercourse with the Daughter.

When Mr. Domaingue took the stand, he denied having such intercourse and, on cross-examination, the prosecutor asked him, over objection, "Did you talk to your daughter about the possibility she might be pregnant by you?" Mr. Domaingue answered, "No." The prosecution showed Mr. Domaingue a transcript of the taped conversation and asked him if that refreshed his memory. Mr. Domaingue again answered, "No." That was the end of the inquiry. The transcript was not introduced into evidence or shown to the jury. The prosecution's attempt to impeach Mr. Domaingue was entirely proper.

When a defendant opens the door to impeachment through his statements on direct, the government may try to establish that his testimony is not to be believed through cross-examination and the introduction of evidence, including tainted evidence, that contradicts the direct testimony.

*United States v. Morla–Trinidad,* 100 F.3d 1, 5 (1st Cir.1996) (footnote omitted).

### C. *Denial of the Motion to Sever*

Prior to trial, Mr. Domaingue sought to sever the forcible rape charge from the other charges against him on the ground that the Massachusetts Rape Shield Law applied only to forcible rape and not to those other charges. He argues that the trial judge's refusal to sever the charges violated his right to due process because he would have been able to introduce the evidence which the trial judge excluded had the forcible rape charge been severed.

■ Trying more than one crime in the same trial is not error unless the joinder renders the trial unfair and violates due process. *Willard v. Pearson,* 823 F.2d 1141,

1149 (7th Cir.1987). A state criminal procedure violates due process if "it offends some principle of justice so rooted in the tradition and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 201–202, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281 (1977); *see also Medina v. California*, 505 U.S. 437, 446, 112 S.Ct. 2572, 2577, 120 L.Ed.2d 353 (1992).

Historical practice is probative of whether a procedural rule can be characterized as fundamental. *Herrera v. Collins*, 506 U.S. 390, 408–411, 113 S.Ct. 853, 864–866, 122 L.Ed.2d 203. Mr. Domaingue cites no historical practice that mandates severing counts for evidentiary reasons. Furthermore, the SJC held in Domaingue's case that it was proper for the trial judge to have excluded the evidence vis-a-vis the incest charges on the basis of common law principles of evidence. *Domaingue* 493 N.E.2d at 845. Severance would not, therefore, have affected the admissibility of any evidence.

### ORDER

For the foregoing reasons Mr. Domaingue's petition for habeas corpus is **DISMISSED**.

So ordered.