## COMMONWEALTH *vs.* TOM LY.

Bristol. March 4, 2009. - July 10, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Indecent Assault and Battery. Due Process of Law,* Assistance of counsel. *Constitutional Law,* Assistance of counsel, Voluntariness of statement. *Evidence,* Voluntariness of statement, Impeachment of credibility, Credibility of witness, Telephone bill. *Practice, Criminal,* Assistance of counsel, Voluntariness of statement. *Witness,* Impeachment, Credibility.

At the trial of a complaint charging indecent assault and battery on a person over the age of fourteen, defense counsel did not render ineffective assistance by failing to move for a mistrial after a midtrial ruling of a single justice of this court overturned a suppression order of the judge and permitted the Commonwealth to use a prior inconsistent statement the defendant made to the police to rebut his trial testimony, where a review of the voir dire of the police officer demonstrated that the defendant's statement was voluntary, and where the admission of the evidence did not combine with the circumstances of the case to make the ·trial unfair in any palpable respect. [227-228]

At the trial of a complaint charging indecent assault and battery on a person over the age of fourteen, defense counsel rendered ineffective assistance by failing either to subpoena the complainant's telephone records or, at a minimum, to have the defendant's own copies at hand when cross-examining the complainant to impeach her testimony that she had not made telephone calls to the defendant after the sexual encounter, where the telephone calls were central to the only issue in the case (i.e., consent); therefore, this court reversed the judgment of conviction and remanded the matter to the District Court for a new trial. [229-231]

COMPLAINT received and sworn to in the Fall River Division of the District Court Department on October 20, 2004.

The case was heard by *Lance J. Garth,* J., and a motion for a new trial, filed on or before October 31, 2006, was considered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jennifer M. Petersen* for the defendant.

*Rachel J. Eisenhaure,* Assistant District Attorney, for the Commonwealth.

CORDY, J. After a jury trial in the Fall River Division of the District Court Department, Tom Ly was convicted of indecent assault and battery on a person over the age of fourteen. The charges arose out of a sexual encounter between the defendant and a female friend (twenty years old at the time of the incident) whom he had known for one and one-half years. Shortly before the incident, their relationship had blossomed into a dating relationship.

The indecent assault took place at approximately 2:30 A.M. on October 19, 2004, in a bedroom of the defendant's apartment.[1] The complainant had arrived at the apartment dressed in pajama bottoms and a sweatshirt at about 2 A.M., in response to the defendant's telephone call asking her to "come over." Although apparent to her that the defendant was intoxicated during the call, she decided to go over to his apartment because she had done so before to "hang out" in his room. On this occasion she lay down on the bed with him to get "comfortable," and they watched television.

What occurred in the time that followed was at the heart of the case. The defendant claimed that they then kissed and had consensual sexual intercourse; the complainant testified that she repeatedly said "no" as he removed her clothes and proceeded to have intercourse.

Afterward, the complainant left the defendant's apartment. That evening, she went to a hospital for examination,[2] and the following evening (October 20) she went to the police station and filed a complaint. Several days later, she contacted the district attorney's office and asked that the charges be dropped. She was persuaded to proceed with the case.

Following his conviction (and represented by new counsel), the defendant filed a motion for a new trial based on ineffective assistance of counsel. Specifically, the defendant alleged that his counsel was ineffective in (1) failing to move for a mistrial after a midtrial ruling of a single justice of this court overturned a suppression order of the judge and permitted the Commonwealth

---

[1] The defendant lived in the apartment with his mother and his four year old son. They, and a man the defendant referred to as an "uncle," were all present (and presumably sleeping) while the complainant was at the apartment.

[2] There was no medical, physical, or forensic evidence offered or admitted in evidence at the trial.

to use a prior inconsistent statement the defendant made to the police to rebut his trial testimony; (2) failing to subpoena the complainant's telephone records to impeach her testimony that she had not made telephone calls to the defendant after the sexual encounter; and (3) failing to call his mother as a witness at trial. The motion for a new trial was denied without a hearing by the trial judge. We transferred the case to this court on our own motion. Before us in the present appeal are both the defendant's direct appeal and the denial of his motion for a new trial. Because we conclude that trial counsel was ineffective, we reverse the conviction.

*Discussion.* 1. *The midtrial ruling of the single justice.* In pretrial discovery, defense counsel received a police report describing the defendant's arrest and a statement he made to police after (according to the report) receiving his Miranda warnings. In that statement, the defendant acknowledged that he had sex with the complainant, that it was the first time he had done so, that he was intoxicated at the time, that "while he was penetrating her," she asked him "to stop," and that he spoke to her the following day and "felt bad [about] what he had done." Defense counsel did not file a motion to suppress this statement prior to the trial. However, during the testimony of the police officer who took the statement,[3] defense counsel objected to and moved to exclude it, claiming that he (defense counsel) had not received a signed Miranda form in the discovery material provided him by the Commonwealth.

After some back and forth as to whether the grounds for the motion included both the failure to provide adequate Miranda warnings and voluntariness, the judge refused to consider the unproduced signed Miranda waiver form and held a voir dire of the police officer. At the conclusion of the voir dire, the judge suppressed the defendant's statement, holding that the "only testimony" he had before him on whether the defendant had been fully advised of his Miranda rights was the testimony of a police officer that she read the defendant his rights (which she incom-

---

[3]The officer was also testifying as a "fresh complaint" witness. The trial of the case began on September 14, 2005, just prior to the release of our decision in *Commonwealth* v. *King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006), which refashioned the fresh complaint doctrine as the "first complaint" doctrine.

pletely explained in her testimony) from a printed form, and that the defendant responded affirmatively. This, the judge ruled, was insufficient to sustain the Commonwealth's burden of proof. The judge further ruled that the Commonwealth also had not sustained its burden of proving that the defendant's statement was voluntarily made, and thus excluded it from any use at the trial, including impeachment.

The prosecutor responded to the rulings by informing the judge that the Commonwealth intended to file an immediate appeal from the order of suppression, and by requesting a stay of the trial to effectuate the appeal. The prosecutor pointed out that had the defendant filed a timely motion to suppress, and had the judge allowed it, the Commonwealth could have sought relief under Mass. R. Crim. P. 15, as appearing in 422 Mass. 1501 (1996), but now would have to file a petition pursuant to G. L. c. 211, § 3. The judge denied the Commonwealth's request for a stay. A petition pursuant to G. L. c. 211, § 3, was promptly filed in the county court, and the trial proceeded.

The defendant then testified that the complainant consented to the sexual intercourse; that she had taken her clothes off and had not said "no" to having sex with him; and that she only objected when he said he was going to ejaculate, telling him that she did not want him to ejaculate inside of her. After the defendant testified, the defense called no further witnesses and rested.

The Commonwealth then asked permission to recall the police officer who had arrested and interviewed the defendant, as a rebuttal witness to rebut the defendant's testimony that the police had not spoken to him after his arrest. The judge permitted the witness to be recalled, but reiterated his prior ruling that testimony regarding what the defendant said to the police at that time was to remain off limits. As the witness began to testify, the trial was stayed by order of the single justice, pending review of the Commonwealth's G. L. c. 211, § 3, petition.

The next day, the trial resumed. In the interim, the single justice had ruled on the petition, granting it in part. The single justice did not disturb the judge's finding that there was inadequate evidence whether the Miranda warnings had been properly administered before the defendant was questioned, but reversed the judge's finding that the Commonwealth had not proved that

the defendant's statement was voluntary. Consequently, the single justice ruled that the statement could be used "for purposes of impeachment of the defendant's testimony."

The police officer retook the stand, and the judge permitted her to testify that after she arrested the defendant he told her that "on several occasions" during the intercourse the complainant told him to "stop." Although defense counsel had objected to the admission of the testimony of the police officer on the basis of it not being proper rebuttal, he did not move for a mistrial. On appeal, the defendant challenges both the correctness of the single justice's ruling and the conduct of his counsel in not seeking a mistrial in circumstances that he claims plainly called for one.

The defendant first urges us to review the single justice's ruling that his statement was voluntary. He argues that the motion judge's finding that his statement was involuntary should have only been reversed for an abuse of discretion or other clear error of law, and further argues that the judge's decision was clearly within the bounds of his discretion. Ordinarily, "decisions of a single justice [made pursuant to G. L. c. 211, § 3,] will not be disturbed on appeal absent clear error of law or abuse of discretion." *Fogarty* v. *Commonwealth*, 406 Mass. 103, 106 (1989), and cases cited. In any event, "[h]owever we might rule on the question whether the single justice committed a clear error of law or abused [his] discretion, we would have to decide the underlying merits of the evidentiary question, which would . . . determine the outcome of this issue." *Commonwealth* v. *Sicari*, 434 Mass. 732, 750 n.14 (2001), cert. denied, 534 U.S. 1142 (2002). We therefore proceed directly to the merits of the claim.

A review of the voir dire of the police officer satisfies us, as it did the single justice, that the defendant's statement was voluntary. The testimony (which was not disputed) was that the defendant was arrested, brought immediately to the police station, booked, advised orally of his Miranda rights by reading them from a form which he then signed and waived, and was interviewed. The interview took place in the Fall River police department interview room, a ten foot by twelve foot room with a table and chairs. Present were the arresting officer and a police sergeant. The questions were all asked by the arresting officer. There was no yelling or threatening. At the beginning of the interview, the defendant appeared "[n]ervous" and "upset" but spoke in a calm

voice. As soon as he was asked what had happened, he "wanted to explain himself," immediately admitting that he "felt bad [about] what he had done." He spoke largely in a narrative without interruption. The interview was not tape recorded and, apparently, was not lengthy. On this record, the defendant's statement could properly be admitted for impeachment purposes. See *Commonwealth* v. *Harris*, 364 Mass. 236, 237-240 (1973) (adopting reasoning of *Harris* v. *New York*, 401 U.S. 222, 224 [1971], that statement elicited in violation of Miranda safeguards may be used to impeach credibility of defendant's testimony if inconsistent with statement, so long as statement is not "coerced or involuntary").

With respect to whether a mistrial should have been sought, appellate counsel essentially contends that the defendant relied on the judge's order that the statement he made at the police station could not be used against him when he made the strategic decision to testify. The reversal of that order after he testified thus called the fairness of the trial into doubt, and it was manifestly unreasonable for trial counsel not to move for a mistrial. The argument is belied by the record in the case.

In defense counsel's opening statement (made at the beginning of trial), he announced that the defendant would testify, and laid before the jury what they would hear when he did so. This was before defense counsel had even moved to suppress the statement made by the defendant, and before any suggestion that the admissibility of the statement was in question. After the judge's ruling, the defendant pursued his previously announced plan and chose to testify even though he was aware that the prosecutor had filed a petition for emergency relief in the county court. These circumstances, followed by a correct ruling of the single justice on the use that could be made of that statement, did not combine to make the trial unfair in any palpable respect, and did not present an adequate basis for a mistrial. It was therefore not ineffective, that is, not manifestly unreasonable, for defense counsel to fail to seek one. See *Commonwealth* v. *Morales*, 440 Mass. 536, 549-550 (2003) (trial counsel not ineffective for failing to move for mistrial where request would have been futile). Cf. *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983) (counsel not ineffective for failing to file motion to suppress that had minimal chance of success).

2. *Failure to subpoena the telephone records.* The only issue in the case was consent, and that issue turned on the credibility of the complainant. The complainant testified that she objected to the defendant's sexual advances and that she was testifying against him because the assault "destroyed me inside and my trust." The defendant, on the other hand, testified that the sex was consensual; the complainant wanted to marry him and move to Michigan to get away from her parents; that once her parents found out about the sexual relationship, they pressured the complainant to bring the criminal complaint; and that when the defendant told the complainant that he could not bring her to Michigan with him in these circumstances, she determined to pursue the criminal complaint rather than dropping it. Critical to evaluating the defendant's story (and the complainant's credibility) was a series of telephone calls (apparently seven in all) which, he testified, the complainant made to his cellular telephone in the immediate aftermath of the sexual encounter, and during which she and he discussed these matters.[4]

Despite the significance of these telephone conversations to the defense of the case, defense counsel did not summons either the complainant's or the defendant's telephone records to the trial. Consequently, when the complainant denied ever calling the defendant after the incident, counsel had no records with which to refresh her recollection or impeach her. At the end of her testimony, however, he informed the court that he did "reserve the right to recall" the witness.

---

[4]The defendant testified that the complainant's first call came approximately twenty minutes after the complainant left his apartment. In that call, the defendant alleges that the complainant told him that she wanted to go to Michigan with him and his son, marry him, and live there. She also told him that her parents did not get along and wanted her out of the house. The defendant responded that they needed to slow down and, essentially, take it one step at a time. Two additional calls came later that same day. In one of the calls, the complainant allegedly explained that the reason she was going to go to the hospital was because of a urinary infection, but that she was afraid that this would cause her parents to suspect that they had had sexual intercourse. Several additional calls came over the next two days in which the complainant allegedly explained that her parents had found out and were forcing her to bring a criminal complaint on the threat of being thrown out of the house; apologized for bringing the complaint; and asked if she could still go to Michigan with him. The defendant testified that he told her that she could not go to Michigan with him in light of what had happened.

When the defendant testified the next day, he was asked by defense counsel whether he had returned home the previous night, and searched for and located his old telephone bills. The defendant responded that he had. Defense counsel then attempted to question the defendant about what was in those records. The questions were objected to by the Commonwealth, and properly excluded by the judge on hearsay grounds. Defense counsel let the matter drop, and, after the defendant testified, rested his case without attempting to recall the complainant.

The prosecutor then recalled the arresting officer to rebut the defendant's testimony regarding the interview that had taken place after the arrest. At this point, defense counsel informed the judge that he also intended to call the complainant as a "rebuttal witness." When the judge inquired as to the purpose of recalling the complainant, defense counsel explained that he wanted to question her about the defendant's telephone records to establish that "she lied under oath." The judge ruled that "based on the representations of counsel," the "information" (presumably the defendant's copies of his telephone bills) "would not be admissible per se," and therefore, "I'm going to exercise my discretion . . . [to decline] to allow you to call that witness in rebuttal."

The case then proceeded to argument and charge. After some initial deliberation, the jury sought a copy of the complainant's testimony. The judge told them that it was not available. The jury subsequently returned a verdict of guilty.

On appeal, the defendant contends that his trial counsel was ineffective in failing to investigate and summons the telephone records to the trial, and in his failure adequately to cross-examine the complainant with respect to the presence of her telephone number on the defendant's telephone bills on the dates and at the times he expected the defendant's testimony to establish. We agree.

The centrality of the telephone calls to the only issue in the case is apparent, and should have been apparent to trial counsel before the case began. There is no excuse for not being prepared for this issue at trial, and for not having either summonsed the telephone company records or, at a minimum, having had at hand the defendant's own copies when he cross-examined the

complainant.[5] In the context of this case, these failures amount to a "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), and likely deprived the defendant of an otherwise available and substantial ground of defense. *Id.*[6]

The judgment of conviction is reversed, and the case remanded to the District Court for a new trial.

*So ordered.*

---

[5]In explaining to the judge why he needed to call the complainant in "rebuttal," defense counsel argued that the complainant's testimony had been false, and, essentially, that he had not been prepared to cross-examine her with telephone records because he had not assumed that she would testify falsely. He further stated that he had instructed the defendant to keep recordings of any messages the complainant might leave him, but that such messages had been "[i]nadvertently" deleted when the defendant's telephone service had been shut off. The relevance of the latter comment to defense counsel's lack of preparedness for the cross-examination of the complainant about telephone conversations she (allegedly) had with the defendant is unclear and provides no justification for it.

[6]In light of our conclusion that trial counsel was ineffective in this respect, we do not consider the further claim that trial counsel was also ineffective for failing to call the defendant's mother as a witness at trial.