**William A. BARRESI, II, Plaintiff**

**v.**

**Michael J. MALONEY, Defendant.**

**No. CIV.A. 00–10403–EFH.**

United States District Court,
D. Massachusetts.

July 24, 2003.

Kenneth G. Littman, Peppard & Littman, Fall River, MA, for William A. Barresi, II, Plaintiff.

Linda A. Wagner, Attorney General's Office, Boston, MA, for Michael J. Maloney, Defendant.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

#### INTRODUCTION

█ Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues that he was deprived of rights protected by the Sixth and Fourteenth Amendments of the United States Constitution by the trial judge's application of the Massachusetts Rape Shield Statute, Mass.Gen.L. ch. 233, § 21B. As a writ of habeas corpus will not ordinarily issue because of evidentiary errors, petitioner must persuade the Court that, regardless of whether the trial judge's decisions were correct as a matter of state law, they "so infuse[d] the trial with inflammatory prejudice as to [have] render[ed] a fair trial impossible." *Allen v. Snow*, 635 F.2d 12, 15 (1st Cir.1980); *DiBenedetto v. Hall*, 176 F.Supp.2d 45, 54 (D.Mass.2000); *Domaingue v. MacDonald*, 978 F.Supp. 53, 57 (D.Mass.1997). As described below, the Court concludes the petitioner has not met this burden. Accordingly, the petition is denied.

#### I. *Procedural Background*

After a jury trial in Massachusetts Superior Court in October, 1995, Petitioner William A. Barresi, II, was found guilty of rape of a child by use of force (Mass. Gen.L. ch. 265, § 22A), and indecent assault and battery on a child under fourteen years of age (Mass.Gen.L. ch. 265, § 31B). He was sentenced to not more than ten years, nor less than six, on the conviction of rape of a child by use of force and not more than five years, nor less than three, on the indecent assault and battery on a child under the age of fourteen. The latter sentence was to be suspended for five years and served from and after the sentence imposed for the former offense. The Massachusetts Appeals Court affirmed the conviction by written opinion. *Commonwealth v. Barresi*, 46 Mass.App.Ct. 907, 705 N.E.2d 639 (1999). The Massachusetts Supreme Judicial Court ("SJC") denied further appellate review. *Commonwealth v. Barresi*, 429 Mass. 1106, 710 N.E.2d 604 (1999). Barresi then petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This Court granted the respondent's motion to dismiss Barresi's petition on September 13, 2000, on the ground that the petitioner had failed to present his claim to the SJC as posing a federal constitutional question and, thus, his state remedies were not exhausted as required by 28 U.S.C. § 2254(b)(1) and (c). On July 23, 2002, the United States Court of Appeals for the First Circuit vacated this Court's dismissal, having concluded that the petitioner had exhausted his state remedies. *Barresi v. Maloney*, 296 F.3d 48 (1st Cir.2002). The case was remanded to this Court for further proceedings. On April 30, 2003, this Court dismissed the petition again because petitioner's memorandum of law

filed subsequent to the First Circuit's opinion raised claims not passed on by the First Circuit, nor argued in petitioner's appeal to the SJC. On June 9, 2003, the Court granted a motion by petitioner and assented to by respondent to amend the petition and file a substitute memorandum.

## II. *Petitioner's Trial*

At trial, the complainant testified that on many occasions in the period between March, 1993 and August, 1993, Barresi, her stepfather, assaulted and raped her. The complainant was thirteen years old at the time of the incidents. The assaults and rapes typically took place at home in the afternoon, after the petitioner had returned from work and before the victim's mother came home.

The Commonwealth also offered testimony by the complainant's brother. He testified that on one occasion he saw the petitioner straddling the victim, who was lying on a couch. According to the victim's brother, the petitioner screamed at him, ordering him outside.

The victim's mother, the petitioner's wife, testified that in the evening on the date that the complainant made her complaint to the police, the mother and the petitioner had arrived home to find three teenage boys asking for the complainant. The complainant's mother asked Barresi to look for the complainant. When Barresi returned with the victim, she and her mother, who was very angry, talked for approximately fifteen minutes. Subsequently, the victim left the house and went to the police station where she made her complaint against the petitioner. The Commonwealth also presented fresh complaint evidence in its case against the petitioner.

At trial, the petitioner denied assaulting and raping the complainant. Instead, he contended that she fabricated the allegations because she was angry about the discipline imposed upon her because it interfered with her relationship with boys. The petitioner also advanced the theory that the complainant was engaged in sexual relations with one or more male teenagers and, therefore, had a motive to lie— her fear that her mother would learn of these relationships and discipline her. To present these theories to the jury, petitioner filed a pretrial motion pursuant to the Commonwealth's Rape Shield Statute, Mass.Gen.L. ch. 233, § 22B.[1] Barresi's petition for a writ of habeas corpus is grounded on the trial court's denial of two forms of evidence he sought to admit in this motion: expert testimony that the complainant was infected with the sexually transmitted disease chlamydia during the time of the incidents, but that the petitioner had not become infected; and evidence of the complainant's sexual history.

---

**1.** The Rape Shield Statute provides in relevant part: "Evidence of specific instances of a victim's sexual conduct ... shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim; provided, however, that such evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof. If, after said hearing, the court finds that the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim, the evidence shall be admitted; otherwise not." Mass.Gen.L. ch. 233, § 21B. In the state appellate proceedings, petitioner unsuccessfully contended that the trial court erroneously applied the Rape Shield Statute in keeping the proffered evidence out. This Court does not revisit that question, as it is not the province of a federal habeas court to re-examine state court determinations on state law questions. *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). This Court may only consider whether the trial court's decision violated the Constitution, law or treaties of the United States. *Id.*

## A. *Doctor's Testimony*

More specifically, in the pretrial motion, petitioner set out facts to show that on August 24, 1993, the complainant tested positive for chlamydia, whereas petitioner's 1994 culture and a 1995 serology test were negative. The petitioner sought to admit these test results to establish that he could not have raped the victim without contracting chlamydia and, therefore, the allegations against him must have been fabricated.

At an evidentiary hearing on the motion, the petitioner called his own physician. The doctor defined chlamydia and explained, in general, the meaning of an incubation period. The physician acknowledged he had never treated a patient for chlamydia. "My practice is basically one of treating adult, elderly people, so my experience with sexually transmitted diseases is not very extensive," he told the court. Instead, petitioner's proffered witness indicated his testimony was based on recent reading about the disease. This reading, he said, indicated that someone who tested positive on August 24, 1993, as the complainant did, would have to have been infected two to three weeks earlier, meaning the complainant carried chlamydia during the time of at least some of the alleged assaults and rapes.

The trial court ruled that the doctor could not testify in part because his knowledge of chlamydia was based entirely upon his readings. The trial court also determined that he had insufficient experience in the area to give any opinion concerning the incubation period, for what period of time the victim could have transmitted the disease, and the likelihood of transmission during that period. On this point, the doctor had said, "When I reviewed the references that I had, I could not get any specific numbers as to how many people ... who actually get exposed actually come down with the infection. I'm not sure that that kind of data is available."

## B. *The Victim's Sexual History*

Also in his pretrial motion, the petitioner sought to introduce evidence that on or about August 18, 1993 and on prior occasions, the complainant had sexual intercourse with James Costa, one of the teenage boys who had come to the house looking for her on the night she made her complaint to police. The trial court denied this portion of the motion "without prejudice," indicating that "if the testimony raises these issues again, we'll deal with it again."

During the course of the trial, the petitioner repeatedly sought to introduce this evidence. Specifically, during cross-examination of the victim, defense counsel inquired about her relationship with the boy. On each occasion, the Commonwealth objected and the trial court sustained the objection.

## III. *The Habeas Corpus Standard*

■ The standard for reviewing a petition for a writ of habeas corpus is set forth in the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996). Because the petitioner is in state custody, his application for habeas review is controlled by 28 U.S.C. § 2254(d)(1). This statute permits a federal court to issue a writ of habeas corpus if the underlying state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under the "contrary to" prong, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Su-

preme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A writ is appropriate under the "unreasonable application" prong "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. To be an unreasonable application of Supreme Court precedent, "some increment of incorrectness beyond error is required." *McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir.2002) (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir. 2000)). "The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *Id.* "For example, the state court decision may be unreasonable if it is devoid of record support for its conclusions or is arbitrary." *Id.* at 36–37 (citing *O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir.1998), *overruled on other grounds, McCambridge,* 303 F.3d at 37). While Supreme Court holdings that were clearly established at the time of the state court proceedings form the primary basis for determining whether a decision was an unreasonable application of clearly established federal law, factually similar cases from lower federal courts provide "a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns." *Rashad v. Walsh,* 300 F.3d 27, 35 (1st Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1360, 155 L.Ed.2d 202 (2003).

## IV. *Analysis*

■ As noted, Barresi has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He contends that such relief is warranted by the trial judge's refusal to allow the medical expert to testify in his defense and to permit cross-examination of the complainant about her prior sexual relationships. According to the petitioner, both rulings violated his right to confront adverse witnesses, as guaranteed by the Sixth and Fourteenth Amendments. As a preliminary matter, the Court notes that exclusions of expert testimony implicate not the Confrontation Clause, but the Sixth Amendment's guaranty of compulsory process, which safeguards a defendant's right "to present his own witnesses to establish a defense." *DiBenedetto,* 176 F.Supp.2d at 56 (quoting *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). Accordingly, the Court analyzes the trial court's exclusion of the expert witness in light of compulsory process jurisprudence. However, the outcome is unaffected by the application of this framework, rather than that of the Confrontation Clause. Petitioner's claim founded on the denial of cross-examination is rightfully argued under the Confrontation Clause.

### A. *Denial of Expert Testimony*

■ The Sixth Amendment guarantees, among other things, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. The Supreme Court has maintained that this aspect of the Sixth Amendment, which protects a defendant's right to present his own witnesses in order to establish a defense, is a "fundamental element of due process of law." *Washington,* 388 U.S. at 19, 87 S.Ct. 1920.[2] In fact, few rights are more funda-

---

**2.** This right is applicable to the States through the Fourteenth Amendment. *Washington,* 388 U.S. at 19, 87 S.Ct. 1920.

mental for the accused. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Nevertheless, this right "is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). For example, the Constitution does not prohibit rules that exclude some relevant evidence in order to ensure that evidence introduced at trial is reliable. *Id.* at 309, 118 S.Ct. 1261. Rules that exclude evidence from criminal trials do not violate this right unless they are " 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *Id.* at 308, 118 S.Ct. 1261 (citing *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). Notably, the First Circuit has described the Supreme Court cases undoing state court convictions based on the exclusion of evidence as involving "egregious situations." *DiBenedetto v. Hall*, 272 F.3d 1, 8 (1st Cir.2001).

■ As noted earlier, to determine whether petitioner's right to present his own witnesses and establish his defense was violated and a writ of habeas corpus is warranted, the Court must assess whether the underlying state adjudication was contrary to, or involved an unreasonable application of clearly established law as determined by Supreme Court precedent. 28 U.S.C. § 2254(d)(1). In a case such as this, *Washington* provides the relevant precedent. *See* 388 U.S. at 19, 87 S.Ct. 1920. In *Washington*, the Supreme Court found that a Texas statute that prevented persons charged as principals, accomplices, or accessories in the same crime from being introduced as witnesses for each other violated the petitioner's right to compulsory process. *Id.* at 15, 19, 87 S.Ct. 1920. It so found because the law *arbitrarily* denied the petitioner the right to introduce a witness capable of offering relevant and material testimony. *Id.* at 23, 87 S.Ct. 1920 (emphasis added). *Wash-*ington, however, set down no bright-line rule for determining when state evidentiary rules violate the right to compulsory process and *Washington* is readily distinguishable on the facts from petitioner's case. The exclusion of petitioner's medical expert implicates the Commonwealth's rules for determining whether individual expert witnesses are qualified to testify, not a rule that effects a wholesale exclusion of testimony by accomplices and the like. Accordingly, the trial court's decision in the instant case cannot be said to be "contrary to" clearly established law. Therefore, the question is whether the principle barring arbitrary or disproportionate evidentiary rules was unreasonably applied by the Massachusetts Appeals Court when it affirmed petitioner's conviction.

■ Under Massachusetts case law, a trial judge has wide discretion to qualify an expert witness and to decide whether the witness' testimony should be admitted. *Commonwealth v. Frangipane*, 433 Mass. 527, 744 N.E.2d 25, 30 (2001). As Congress and the federal judiciary have under the Federal Rules of Evidence, Massachusetts has chosen to place the trial judge in this gatekeeper position in order to ensure that expert testimony is not only relevant, but reliable. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under Massachusetts law, to determine whether a witness is qualified to give an expert opinion, i.e., whether the testimony the witness proposes to offer will be reliable, the judge must consider "whether the witness has sufficient 'education, training, experience and familiarity' with the subject matter of the testimony." *Frangipane*, 744 N.E.2d at 30 (quoting *Commonwealth v. Richardson*, 423 Mass. 180, 667 N.E.2d 257, 260 (1996)) (quoting *McLaughlin v. Selectmen of Amherst*, 422 Mass. 359, 664 N.E.2d 786, 788 (1996)). Such a rule,

which sets out criteria to be used to sort reliable expert testimony from unreliable expert testimony cannot be said to be arbitrary and, thus, violative of the Sixth Amendment. In fact, in its *Daubert* decision, the Supreme Court approved the placement of trial judges in the role of gatekeepers under Federal Rule of Evidence 702, a fact that undermines any argument that Massachusetts' law in this respect is unconstitutionally arbitrary. *See* 509 U.S. at 589, 113 S.Ct. 2786.

Nor did the trial judge apply the Massachusetts law on expert qualification arbitrarily. *See DiBenedetto,* 176 F.Supp.2d at 61. In electing to exclude the witness, the trial judge pointed to particular facts regarding the physician's education, training, and familiarity with chlamydia—namely, the source of his information and his lack of firsthand experience treating patients with chlamydia. Such a considered determination defeats a finding that the judge's application of this rule was arbitrary. "On the contrary, the judge made a reasoned decision that he understood to be within his discretion under the Massachusetts case law...." *Id.* Because Massachusetts' law regarding the qualifying of expert witnesses is not arbitrary and was not arbitrarily applied in petitioner's case, the Court concludes that the exclusion of the witness' testimony did not violate the petitioner's Sixth Amendment right to compulsory process.

### B. *Denial of Cross–Examination*

The second ground on which the petitioner rests his claim for federal relief is the Sixth Amendment right to confront adverse witnesses. Specifically, the petitioner contends that the trial judge violated this right by prohibiting defense counsel from cross-examining the complainant about her sexual relationship with James Costa. The petitioner contends that, if allowed, this evidence could have persuaded the jury that the complainant fabricated the allegations against him in order to keep her mother in the dark about that sexual relationship.

 The Sixth Amendment provides, among other things, that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment right of confrontation is fundamental and applicable to the states through the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). It is axiomatic that "[c]onfrontation means more than being allowed to confront the witnesses physically." *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). "A primary interest secured by [the Confrontation Clause] is the right of cross-examination." *Id.*

Among the constitutionally protected aims of cross-examination is the impeachment of the witness, either by suggesting "that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony" or by "revealing possible biases, prejudices, or ulterior motives." *Davis,* 415 U.S. at 316, 94 S.Ct. 1105. Courts typically afford cross-examination aimed at bias, ulterior motives, and the like greater protection than general credibility attacks.[3]

---

**3.** This distinction between impeachment by an attack on the witness' general credibility and impeachment by a showing of bias and improper motive is apparent in the fact that most rules of evidence curtail the use of specific instances of conduct to attack general credibility, but do not similarly limit impeachment based on motive or bias. *See, e.g.,*

*Quinn v. Haynes,* 234 F.3d 837, 845 (4th Cir.2000) (citing Jack B. Weinstein, et al., *Weinstein's Federal Evidence* § 607.04[1] (2d ed. 2000) ("Since bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and in-

"[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* (citing *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)).

"Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295, 93 S.Ct. 1038. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Acceptable limitations aside, however, the "denial or significant diminution [of the right of confrontation] calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." *Chambers*, 410 U.S. at 295, 93 S.Ct. 1038 (quoting *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969)).

■■■ Of course, to determine whether petitioner's confrontation rights were violated, the Court must assess whether the underlying state adjudication was contrary to, or involved an unreasonable application of clearly established law as determined by Supreme Court precedent. 28 U.S.C. § 2254(d)(1). In a case such as this, *Olden v. Kentucky* provides the relevant precedent. *See Dolinger v. Hall*, 302 F.3d 5, 9, (1st Cir.2002) (citing *Olden*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988)). In *Olden*, the Supreme Court granted Olden's petition for a writ of habeas corpus because the trial court refused to permit defense counsel to cross-examine the victim regarding her cohabitation with her boyfriend, a line of inquiry that was direct-

ed at showing that the victim had a motive to fabricate the allegations. 488 U.S. at 228–32, 109 S.Ct. 480. The petitioner's theory of the case was that the victim, a white woman, concocted a story of rape to protect her relationship with her boyfriend, a black man, who had seen her get out of the car of the defendant, also a black man. *Id.* at 230–31, 109 S.Ct. 480. The Kentucky Court of Appeals upheld the trial judge's exclusion of the evidence because of the possible effect of jurors' racial biases. *Id.* at 231, 109 S.Ct. 480. "For the trial court to have admitted into evidence testimony that [the victim] and [her boyfriend] were living together at the time of the trial may have created extreme prejudice against [the victim]," according to the Kentucky appellate court. *Id.* (internal citation omitted). The Supreme Court concluded that the rationale for excluding the proffered evidence was "beyond reason," particularly given the strong potential the evidence possessed to show the victim's testimony was false. *Id.* at 232, 109 S.Ct. 480. Despite the similarities between petitioner's case and *Olden*, this Court does not conclude that the Massachusetts Appeals Court ruled "contrary to" *Olden*. *See Dolinger*, 302 F.3d at 9. First, unlike the petitioner's proffer, the *Olden* proffer was not barred by application of the Kentucky rape shield law. *Id.* And further, *Olden* sets out no bright-line test for evidentiary rulings implicating the Confrontation Clause. *Id.* Rather, *Olden* requires a "case-and-fact-specific balancing test" in which the proposed cross-examination's relevance to the defendant's case is weighed against the potential to cause unfair prejudice to the victim and the extent to which the proffer would be repetitive or duplicative of other evidence. *See id.* Accordingly, the trial judge in petitioner's

fluences operating on the witness to determine whether a modification of testimony

reasonably could be expected as a probable human reaction.")).

case cannot be held to have ruled contrary to Supreme Court precedent.

■ The question then becomes whether the Appeals Court "unreasonably appl[ied]" the principle of *Olden* to petitioner's case. *Id.* at 10. To answer that question, the Court must determine whether the trial court's limits on cross-examination represented a reasonable weighing of the state's interest in avoiding "harassment, prejudice, confusion of the issues, . . . or interrogation that [would be] repetitive or only marginally relevant" and the significance of the defendant's right to effective cross-examination. *Olden*, 488 U.S. at 232, 109 S.Ct. 480 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)); *Dolinger*, 302 F.3d at 10.

The Court accepts petitioner's argument that the complainant's sexual relationship with the teenage boy was relevant. The complainant's desire to keep that relationship from her mother and avoid the discipline that might result should her mother learn of the relationship could have motivated the complainant to fabricate the allegations against the petitioner.

However, the Massachusetts Rape Shield Statute establishes a rebuttable presumption that such evidence, even though relevant, would be prejudicial to the victim. *Dolinger*, 302 F.3d at 11. And, the Supreme Court has held that rape shield laws are not per se Sixth Amendment violations where the exclusion serves legitimate state interests in protecting the victim. *Michigan v. Lucas*, 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991); *Dolinger*, 302 F.3d at 11. More specifically, the First Circuit has held that it is not an unreasonable application of *Olden* to exclude such cross-examination under a rape shield law where, as here, "the prejudice and harassing cross-examination proffered is to be inflicted upon a victim who is a minor." *Dolinger*, 302 F.3d at 11.

■ Further supporting the conclusion that petitioner's rights under the Confrontation Clause were not violated is the fact that, as noted by the Massachusetts Appeals Court, notwithstanding the trial court's limits on cross-examination, petitioner had ample opportunity to "show the victim's hostility towards the [petitioner], her rebelliousness, and her conflict with her mother about her boyfriends." *Barresi*, 705 N.E.2d at 641. Specifically, the complainant testified on direct examination that on the day she reported the incidents to police her mother had been "scared" when the complainant's friends came looking for the complainant and that she had argued with her mother immediately before she went to the police station. On cross-examination, the complainant testified that her mother was upset in particular about the fact that James Costa, a boy who was a few years older than the complainant, was looking for her daughter. The complainant's mother corroborated her daughter's testimony on this point during direct examination. The complainant also testified that she and her mother argued about the boys. On direct examination, the complainant also testified to an argument with the petitioner about a note that petitioner was able to suggest pertained to sexual matters. On re-direct, the complainant acknowledged that she was jealous of the petitioner because of her mother's marriage to the petitioner and the fact that her mother spent more time with the petitioner than with her and her brother. Finally, the petitioner testified that Costa was the complainant's boyfriend and that her mother had told her she could have no boyfriends or she would have to go and live with her father. And, despite the trial court's ruling on cross-examination, the petitioner's defense counsel was permitted to argue in closing that the complainant was motivated by a desire to hide

the relationship with Costa from her mother. The petitioner's interest in further cross-examination must be evaluated in light of the evidence suggesting a motive to lie already before the jury. "When a witness's credibility is at issue, the trial court may impose limits on cross examination without violating a defendant's confrontation right so long as the court grants the defendant sufficient leeway to establish a reasonably complete picture of the witness's bias and motivation to fabricate." *Domaingue v. MacDonald,* 978 F.Supp. 53, 58 (D.Mass.1997) (citing *United States v. Laboy–Delgado,* 84 F.3d 22, 28 (1st Cir. 1996)) (quoting *United States v. Boylan,* 898 F.2d 230, 254 (1st Cir.1990)). In *Domaingue,* the petitioner challenged the trial court's exclusion of cross-examination as to the complainant's prior sexual promiscuity, her alleged pregnancy and abortion, and the fact that she had contracted a vaginal infection. 978 F.Supp. at 57.[4] According to the District Court (Gorton, J.), Domaingue failed to demonstrate that there was not fair support in the record for the SJC's conclusion that, notwithstanding the excluded cross-examination, the complainant's prior sexual conduct was only "marginally relevant" and the evidence at trial as to her potential bias was substantial. *Id.* at 58. To similar effect, the Massachusetts Appeals Court found that, notwithstanding the excluded cross-examination in the petitioner's trial, "the defendant was allowed to show the victim's hostility towards the defendant, her rebelliousness, and her conflict with her mother about her boyfriends." *Barresi,* 705 N.E.2d at 641. As described above, there is fair support for this conclusion in the record. The petitioner was given "sufficient leeway" to show the complainant's alleged motive to fabricate. *See Domaingue,* 978 F.Supp. at

58. Therefore, the restriction on cross-examination did not violate petitioner's rights under the Confrontation Clause. *Id.*

## CONCLUSION

Grounding his petition on alleged evidentiary errors, petitioner accepted a considerable burden, one he has not met. After all, decisions about the admissibility of evidence, even if incorrect as a matter of state law, must "so infuse the trial with inflammatory prejudice as to render a fair trial impossible" in order to warrant habeas relief. *Allen,* 635 F.2d at 15. With regard to his challenge to the exclusion of expert testimony, petitioner had to show that the exclusion was arbitrary or disproportionate to the purposes of Massachusetts' law allowing trial judges to act as the gatekeepers of such evidence. *Scheffer,* 523 U.S. at 308, 118 S.Ct. 1261. However, the decision to exclude the proffered testimony was a considered one based on the appropriate criteria enumerated in the Commonwealth's case law. As to his Confrontation Clause argument, the petitioner had to show he was not given "sufficient leeway" to illuminate for the jury the complainant's motivation to fabricate the charges against him. *Laboy–Delgado,* 84 F.3d at 28; *Domaingue,* 978 F.Supp. at 58. However, the record of petitioner's trial demonstrates fair support for the conclusion that petitioner was, in fact, given such leeway. For these reasons, the Court denies the petition.

The Petition for Writ of Habeas Corpus is denied.

SO ORDERED.

---

4. The trial judge excluded the evidence on the basis of the Rape Shield Statute, but the SJC affirmed based on common law principles because it concluded the Rape Shield Statute did not apply to cases involving allegations of incest. *Domaingue,* 978 F.Supp. at 57.