******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* TRAVIS LANIER
## (SC 20620)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Alexander, Js.

*Syllabus*

Convicted of the crime of burglary in the second degree, the defendant appealed to the Appellate Court, claiming, inter alia, that the trial court had violated his constitutional rights to confrontation, to present a defense, and to a fair trial when it limited defense counsel's cross-examination of the victim with respect to matters pertaining to the victim's bias and motive to fabricate allegations against the defendant. The victim, who had been serving probation for a felony conviction, encountered the defendant, with whom he was acquainted, and another individual, M, at a bar, when the defendant asked the victim if he could borrow some money. The victim gave the defendant twenty dollars and remarked that he had additional money at home that he was saving for his rent. When the bar closed, they all went to the defendant's apartment, where M struck the victim several times and accused him of stealing his wrist watch. The defendant and M then ordered the victim to take them to the victim's apartment, and, when they arrived, the defendant demanded that the victim give him his money. The victim gave the defendant an envelope containing $800 in $100 and $50 bills. The defendant took some of the money and told the victim that he would hurt him if he contacted the police. Once the defendant and M departed, the victim called 911. A police officer responded to the call and encountered the defendant and M walking near the victim's apartment. The defendant continued to disregard the officer's multiple orders to stop and continued walking around a corner and onto a side street. A second police officer arrived on the scene, and, while that officer secured the defendant and M, the first officer searched the side street and discovered two $100 bills. In anticipation of trial, the defendant sought permission to question the victim concerning his prior felony conviction, his probationary status at the time of the incident, his arrests while on probation, and the specific conditions of his probation, which required that the victim undergo substance abuse treatment and that he not be arrested. The defendant argued that the victim's probationary status was a legitimate area of inquiry because the jury reasonably could infer from it that the victim had an interest in currying favor with the state and that the specific conditions of the victim's probation were relevant to his state of mind at the time of the incident and his motive to fabricate the allegations against the defendant. Specifically, the defendant argued that the victim was motivated to fabricate the allegations to avoid being accused of stealing M's watch and to recover the money that was taken from him as payment for M's watch. The trial court ultimately permitted defense counsel to question the victim about his prior felony conviction, his probationary status, and his financial concerns and hardships at the time of the incident but prohibited her from cross-examining the victim about his recent violation of probation, his arrests while on probation, or the specific conditions of his probation. In doing so, the trial court determined that the defendant's proffered theory in support of the prohibited lines of questioning, namely, that the victim had fabricated his allegations to recover the money the defendant took from him and to avoid being arrested for stealing M's watch, which could have affected his probationary status, was too speculative. The Appellate Court affirmed the judgment of conviction, concluding that, because the trial court had allowed defense counsel to conduct an extensive and robust cross-examination of the victim, during which she emphasized the victim's felony probationary status and the many inconsistencies in the victim's testimony, the trial court did not violate the defendant's constitutional rights or otherwise abuse its discretion by limiting defense counsel's cross-examination. On the granting of certification, the defendant appealed to this court. *Held*:

1. The trial court did not violate the defendant's constitutional rights to

confrontation, to present a defense, or to a fair trial:

The trial court's restriction on defense counsel's cross-examination did not foreclose her from cross-examining the victim on matters tending to show the victim's motive, bias, or interest to fabricate his allegations against the defendant but merely set reasonable limits on the scope of that inquiry, and defense counsel was permitted to expose facts from which the jury could have appropriately drawn inferences relating to the victim's credibility.

Defense counsel was afforded an adequate opportunity to cross-examine the victim, which included questions about M's allegedly stolen watch and the victim's financial difficulties, and to present the defense's theory of the case, namely, that the victim was motivated to fabricate the allegations against the defendant so that he could recover the money the defendant had taken from him and avoid arrest for allegedly stealing M's watch.

2. The defendant could not prevail on his claim that the trial court had abused its discretion by limiting defense counsel's cross-examination of the victim because, even if the trial court had abused its discretion, the defendant failed to demonstrate that the error was harmful:

Although the victim's testimony was critical to proving that the defendant had committed the burglary, the state's case was strong, and there was ample corroborating evidence demonstrating that the defendant had unlawfully entered and remained in the victim's apartment while placing the victim under threat of physical harm and with the intent of stealing the victim's money, and that evidence included photographs of the victim's injuries, medical records, and testimony from emergency room personnel; M's testimony that the victim had been assaulted, that the defendant was present for the assault, and that the defendant and M walked the victim to his apartment to get his money; and dispatch call sheets, testimony from a police dispatcher, and 911 call transcripts all indicating that the victim had not led the defendant and M back to the victim's apartment voluntarily.

Moreover, the defendant's conduct upon encountering the police, including his ignoring the officers' commands, his walking away from one of the officers, and his disposal of two $100 bills on the sidewalk before returning to the officers, supported the inference that the defendant had acted in that manner because the money was evidence of the burglary, and he did not want the police to find it on his person or to observe him disposing of it.

Defense counsel was otherwise permitted to conduct cross-examination and to introduce evidence to adequately advance the defense's theory that the victim had fabricated the allegations against the defendant, as counsel elicited testimony from the victim that he had been convicted of a certain felony, that he was on probation, and that he faced certain financial difficulties at the time of the incident, counsel impeached the victim's credibility by highlighting the many inconsistencies in his statements, M's testimony provided a basis for the defendant's claim that the victim had stolen M's watch and offered him money as compensation for the theft, and defense counsel's closing argument, which drew from the testimony elicited during cross-examination of the victim and direct examination of M, demonstrated that counsel was able to cogently present the defense's theory of the case.

Furthermore, there was no merit to the defendant's contention that the prosecutor's rebuttal argument that the defendant had failed to show any motive for the victim to fabricate his allegations compounded the harm allegedly caused by the trial court's limits on defense counsel's cross-examination of the victim, as the trial court mitigated any potential harm by instructing the jury that statements made by counsel during closing arguments are not evidence and by reminding the jury to draw its own conclusions concerning the credibility of the witnesses, and the prosecutor's rebuttal argument did not change the fact that defense counsel, during her own closing argument, relied on the evidence that she was able to introduce to argue that the victim had been motivated to fabricate the allegations against the defendant due to the victim's probationary status.

In addition, this court could not conclude that the trial court's limits on

defense counsel's cross-examination would have had any meaningful impact on the jury's verdict, as it was unlikely that testimony regarding the specific conditions of the victim's probation would have made defense counsel's presentation of the defense's theory of the case any more persuasive, as the jurors reasonably could have surmised, on the basis of their own common knowledge, that a probationer would seek to avoid arrest.

Argued October 11, 2022—officially released July 11, 2023

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of robbery in the first degree, robbery in the second degree, conspiracy to commit robbery in the first degree, conspiracy to commit robbery in the second degree, assault in the second degree, and burglary in the second degree, and, in the second part, with being a persistent felony offender, brought to the Superior Court in the judicial district of Middlesex, where the first part of the information was tried to the jury before *Suarez, J.*; verdict of guilty of burglary in the second degree; thereafter, the defendant was tried to the court on the second part of the information; finding of guilty; subsequently, the court, *Suarez, J.*, rendered judgment in accordance with the verdict and the finding, from which the defendant appealed to the Appellate Court, *Bright, C. J.*, and *Moll* and *Bear, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Pamela S. Nagy*, supervisory assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom were *Russell Zentner*, senior assistant state's attorney, and, on the brief, *Michael A. Gailor*, state's attorney, for the appellee (state).

*Opinion*

ALEXANDER, J. In this certified appeal, the defendant, Travis Lanier, challenges the judgment of the Appellate Court, which affirmed the defendant's conviction of burglary in the second degree in violation of General Statutes § 53a-102 (a). The defendant claims that the Appellate Court incorrectly concluded that (1) the trial court did not violate his constitutional rights to confrontation, to present a defense, and to a fair trial under the sixth and fourteenth amendments to the United States constitution, and (2) the trial court did not abuse its discretion when it limited defense counsel's cross-examination of the victim, Alejandro Marrinan.[1] We affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts. On the evening of January 28, 2018, the victim went to the Corner Pocket, a bar in Middletown, where he encountered the defendant, who was there with a small group, including Mason Moniz. The defendant, who was acquainted with the victim, bought him a drink and, at some point, asked if he could borrow some money. The victim gave the defendant $20 and remarked that he had additional money at home that he was saving for his rent. After the bar closed at 1 a.m., the defendant invited the victim and Moniz back to his apartment. When they arrived at the defendant's apartment, Moniz struck the victim several times[2] and accused him of stealing his watch. Moniz testified that, about two weeks prior to the night in question, the victim had been at his apartment and stolen a watch while Moniz' back was turned. Moniz further testified that, when he confronted the victim about the watch, the victim had denied taking it but offered to pay Moniz $300 as compensation for it. The victim testified that he "had no idea what [the defendant and Moniz] were talking about" when they confronted him about the watch. He further testified that the defendant and Moniz had demanded that he take them to his apartment to get money or they were going to hurt him.

While the three men walked to the victim's apartment, the victim secretly dialed 911 on his cell phone in his pocket, hoping that the call would alert the police to his location.[3] When the three men arrived at the victim's apartment, the defendant ordered him to open the door, and the defendant and Moniz forced him inside. Once inside, the defendant demanded that the victim give him his money. The victim had $800 in a bank envelope in his bedroom closet, in denominations of $100 and $50 bills, that he was saving for his rent payment. After the victim removed the envelope from the closet, the defendant grabbed it, removed a portion of the money, and told the victim that he would hurt him if he talked to the police. He then invited the victim back to his apartment to drink some more beer, which the victim declined to do.

After the defendant and Moniz left the apartment, the victim again called 911 and told the operator that two individuals had just robbed him and that these individuals were walking down the street. The victim said that he was afraid for his life because one of them had threatened to shoot him if he talked to the police. He also informed the operator that, before leaving his apartment, the individuals had invited him back to their apartment. After receiving the 911 dispatch, Officer Kyle Pixley of the Middletown Police Department encountered the defendant and Moniz walking down Main Street, a short distance from the victim's apartment. When Pixley ordered them to stop, both men continued walking. After Pixley ordered them to stop several more times, Moniz complied, but the defendant continued to disregard Pixley's orders and walked around the corner from Main Street onto Rapallo Avenue. A second officer arrived and ordered the defendant to comply several times, after which the defendant walked back toward Main Street. While the second officer secured the defendant and Moniz, Pixley walked over to Rapallo Avenue to see whether the defendant had disposed of something when he had walked around the corner. Pixley discovered two $100 bills on the sidewalk.[4] The officers also found two $50 bills on Moniz.

Middletown police officers interviewed the victim at his apartment and then took him in a police cruiser to the area where the defendant and Moniz had been detained. After the victim identified the defendant and Moniz as the individuals who stole his money, the police took him back to his apartment. He subsequently was transported by ambulance to a hospital after complaining to an officer about a head injury. The hospital medical staff observed blunt trauma to the victim's face and determined that he had a broken nose. At the hospital, the victim conveyed to the emergency department staff that he was concerned that he might have been drugged.

The defendant was arrested and charged in a six count information with committing various crimes.[5] "[I]n count six, the state alleged that the defendant committed burglary in the second degree [in violation of § 53a-102 (a)] by entering or remaining unlawfully in the victim's apartment sometime between 1 and 2:50 a.m. on January 29, 2018, while the victim was present, with the intent to commit a crime therein . . . ." *State* v. *Lanier*, 205 Conn. App. 586, 594, 258 A.3d 770 (2021). "Following a jury trial . . . the defendant [was found] guilty of burglary in the second degree as alleged in count six and not guilty of the charges in counts one through five." Id.

The victim was the state's key witness at trial. At the time of the incident, the victim was on probation for a 2017 felony conviction for operating a motor vehicle while under the influence of intoxicating liquor or drugs (felony DUI conviction). Id., 595. Prior to trial, the

defendant filed a motion in limine, seeking permission to question the victim concerning (1) his 2017 felony DUI conviction, (2) his probation status during the events underlying the defendant's criminal charges, (3) his arrests while on probation and his violation of probation,[6] and (4) the specific conditions of his probation.

In the motion in limine, the defendant argued that the jury reasonably could infer that the victim may "wish to curry favor with the prosecuting authorities" because of his probation status, and, therefore, it was a legitimate area of inquiry for cross-examination. He further argued that the specific conditions of the victim's probation were relevant to the victim's state of mind at the time of the incident and his motive to fabricate the allegations against the defendant. Specifically, the defendant sought to ask the victim "whether . . . he knew that one of the conditions of his probation was substance abuse treatment" and that the authorities could find that he violated his probation if they became aware that he had been intoxicated on the night in question. He also sought to ask the victim "whether one of the standard conditions of his probation was not to be arrested." The defendant argued that this question was relevant because, if the victim knew that one of the conditions of his probation was not to have any new arrests, he may have been motivated to fabricate his allegations against the defendant to avoid being accused of "stealing [Moniz'] watch." In addition to establishing any concerns the victim may have had due to his probationary status, the defendant sought to establish that the victim fabricated his allegations to recover the money that the defendant and Moniz took from him as payment for the allegedly stolen watch.

At trial, the prosecutor moved to preclude defense counsel from cross-examining the victim on whether he believed that his consumption of alcohol on the night in question could result in a violation of his probation. The prosecutor also objected, on relevancy grounds, to defense counsel's questioning the victim on whether an arrest would violate the victim's probation.

The trial court allowed defense counsel to question the victim about his prior felony conviction, his current probation status, and his financial concerns and hardships at the time of the incident, but prohibited him from cross-examining the victim about his recent violation of probation, his prior arrests while on probation, or the specific conditions of his probation. The court reasoned that the defendant's proffered theory in support of those lines of questioning was "too speculative." As to the questions regarding the victim's possible fear of a future violation of probation, the court observed that "[t]here are many reasons why somebody can get violated [on] probation" and that the proposed questions were "speculative."[7]

Consistent with the court's rulings, during cross-

examination of the victim, defense counsel elicited testimony that, at the time of the incident, the victim had been on probation for a prior felony DUI conviction and that he was still on probation at the time of the trial. Defense counsel also asked questions eliciting responses revealing that, at the time of the incident, the victim had been experiencing financial difficulties arising from an "expensive" divorce, a desire to provide for his son, and employment that he believed "wasn't giving [him] what [he] needed for money." Additionally, defense counsel drew attention to several inconsistencies in the victim's testimony, including what beverages he drank on the evening in question, how many drinks he consumed, how much money was actually stolen from him, and the fact that the victim told hospital staff that he might have been drugged but never brought that concern to the attention of the 911 operator or the police.

The Appellate Court concluded that, because the trial court allowed defense counsel to conduct an "extensive and robust cross-examination of the victim," during which she emphasized the victim's felony probationary status and the "many inconsistencies in the victim's testimony," the court did not violate the defendant's constitutional rights by declining to permit cross-examination regarding the victim's recent violation of probation, his prior arrests while on probation, or the specific conditions of his probation. *State* v. *Lanier*, supra, 205 Conn. App. 614. The Appellate Court also held that the trial court had not abused its discretion in excluding the line of inquiry as speculative and, consequently, irrelevant. Id., 613–15.

I

We first address the defendant's claim that the trial court's limitations on defense counsel's cross-examination of the victim violated the defendant's constitutional rights. "[T]he sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him.[8] . . . The primary interest secured by confrontation is the right to cross-examination . . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment. . . . Further, the exclusion of defense evidence may deprive the defendant of his constitutional right to present a defense. . . .

"However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Thus, [t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . .

"Although [t]he general rule is that restrictions on

the scope of cross-examination are within the sound discretion of the trial [court] . . . this discretion comes into play only *after* the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . Indeed, if testimony of a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to reveal any infirmities that cast doubt on the reliability of that testimony. . . . [A] claim that the trial court unduly restricted cross-examination generally involves a two-pronged analysis: whether the aforementioned constitutional standard has been met, and, if so, whether the court nonetheless abused its discretion . . . .'' (Emphasis added; footnote added; internal quotation marks omitted.) *State* v. *Leconte*, 320 Conn. 500, 510–12, 131 A.3d 1132 (2016).

Our review of the record reveals that the trial court's restriction of defense counsel's cross-examination of the victim did not violate the defendant's constitutional rights. The trial court did not foreclose defense counsel from cross-examining the victim on matters tending to show motive, bias, or interest, but merely set reasonable limits on the scope of that inquiry regarding the victim's probationary status, conditions, and the like. Compare *State* v. *Francis*, 228 Conn. 118, 122–24, 635 A.2d 762 (1993) (trial court's prohibiting all inquiry into probationary status of state's witness to show bias violated defendant's constitutional rights), with *State* v. *Gibson*, 340 Conn. 407, 422–23, 264 A.3d 83 (2021) (limiting defense counsel's cross-examination of state's witness regarding his pending criminal charges to show bias was appropriate when trial court did not prohibit all inquiry about them). In cases such as the present one, in which the trial court did not foreclose cross-examination of the witness to show motive, bias, or interest, we inquire whether the limitations imposed by the trial court permitted defense counsel to expose facts from which the jury could appropriately draw inferences relating to the witness' credibility or reliability. See, e.g., *State* v. *Bermudez*, 341 Conn. 233, 271, 267 A.3d 44 (2021).

In the present case, the trial court allowed defense counsel an adequate opportunity to cross-examine the victim and to introduce evidence supporting the defense's theory of the case—that the victim fabricated his allegations against the defendant to recover the money the defendant took from him and to avoid being arrested for stealing Moniz' watch, which could have affected the victim's probationary status. See, e.g., *State* v. *Torres*, 343 Conn. 208, 218, 273 A.3d 163 (2022) (''[i]n order to determine whether a defendant's constitutional right

to cross-examination has been satisfied, [w]e consider . . . whether the field of inquiry was adequately covered by other questions that were allowed" (internal quotation marks omitted)). Defense counsel also cross-examined the victim about the stolen watch and his financial difficulties at the time of the incident to show that the victim was motivated to make false allegations against the defendant to recover his money and to avoid arrest. The trial court also permitted defense counsel to cross-examine the victim about his felony DUI conviction, as well as the victim's current probationary status.

During closing argument, defense counsel relied on this testimony and other evidence to make the very argument that the defendant now claims the trial court's rulings prevented him from being able to make. Specifically, defense counsel argued: "[The victim] testified that, at the time this happened, he was on a supervised probation for a felony DUI [conviction]. He testified that he had been drinking that night. . . . He owed money. His rent was due. He was so concerned about money . . . . How badly did he need that $300 back? . . . He had been accused of stealing some watch, and what if [Moniz] had reported the stolen watch to the police? What would happen if [the victim] had been arrested and charged with stealing that watch? What would be the consequence to him? Does it make sense that he'd want to get ahead of it? Now, he didn't know that [Moniz] wasn't going to report the stolen watch because [Moniz] had [outstanding] warrants [for his arrest]. [The victim] had no way of knowing that."

Thus, the evidence of the victim's prior felony conviction, his probationary status, his financial difficulties, and his inconsistent statements were sufficient to allow the jury to draw appropriate inferences relating to the victim's alleged bias and motive to fabricate his allegations against the defendant. See, e.g., *State* v. *Mark R.*, 300 Conn. 590, 614–15, 17 A.3d 1 (2011) (restriction on cross-examination of state's witness for alleged motive to fabricate was not constitutional violation when permitted cross-examination and closing argument gave jury fair opportunity to consider facts supporting defendant's theory of case); see also *Barresi* v. *Maloney*, 273 F. Supp. 2d 144, 154 (D. Mass. 2003) ("[w]hen a [witness'] credibility is at issue, the trial court may impose limits on [cross-examination] without violating a defendant's confrontation right so long as the court grants the defendant sufficient leeway to establish a reasonably complete picture of the [witness'] bias and motivation to fabricate" (internal quotation marks omitted)). A court is not constitutionally obligated to permit a defendant to present *every* piece of evidence that might support his theory of defense. See, e.g., *State* v. *Jordan*, 329 Conn. 272, 287 n.14, 186 A.3d 1 (2018) ("[t]he constitutional right to present a defense does not include the right to introduce any and all evidence claimed to

support it"). Because the trial court permitted defense counsel sufficient latitude in her cross-examination of the victim to present evidence that the victim was motivated to fabricate the allegations due to his probationary status, the trial court's ruling permitted the defendant to expose to the jury the facts from which it could appropriately draw inferences relating to the victim's credibility or reliability. Accordingly, we conclude that the defendant's constitutional rights were not violated.

## II

We next address the defendant's evidentiary claim that the trial court abused its discretion in limiting defense counsel's cross-examination of the victim on the ground that the proffered line of questioning was speculative. We need not consider whether the trial court's restriction on defense counsel's cross-examination of the victim constituted an abuse of discretion because, assuming, without deciding, that the trial court abused its discretion, we conclude that the defendant has failed to satisfy his burden of proving harm.

"When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case depends [on] a number of factors, such as the importance of the witness' testimony in the [defendant's] case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Mark T.*, 339 Conn. 225, 251, 260 A.3d 402 (2021).

The defendant claims that the trial court's restriction on defense counsel's cross-examination of the victim was harmful because it prevented him from demonstrating to the jury that the victim was motivated to fabricate his allegations against the defendant, which was central to the defendant's defense. The defendant contends that the state's case was weak, relying primarily on the victim's testimony, which exhibited several inconsistencies.[9] Lastly, the defendant contends that the harm resulting from the trial court's restriction was compounded by the prosecutor's rebuttal argument insofar as he emphasized that the defendant had failed to present any such motive, thereby capitalizing on the defendant's inability to fully expose the victim's motive

to fabricate. We disagree.

The state's case for burglary was strong. In order to prove that the defendant committed burglary in the second degree in violation of § 53a-102 (a), the state had to prove that the defendant entered or remained unlawfully in a dwelling, while a person other than a participant in the crime was actually present in such dwelling, with the intent to commit a crime therein. Undoubtedly, as the state's key witness, the victim's testimony was critical to proving that the defendant had committed the offense. Ample evidence introduced at trial, however, corroborated his testimony, demonstrating that any error in excluding the testimony sought by the defendant was harmless.

The state produced evidence demonstrating that the defendant had unlawfully entered and remained in the victim's apartment by forcing the victim to provide the defendant and Moniz access under threat of physical harm with the intent of stealing the victim's money. Photographs of the victim's injuries, medical records, and testimony from emergency room personnel indicated that the victim had shown signs of blunt trauma and sustained a broken nose, substantiating the victim's testimony that he had been assaulted. Moniz provided testimony confirming that the victim had been assaulted, that the defendant was present for the assault, and that the defendant and Moniz walked the victim to his apartment to get his money. Dispatch call sheets, testimony from the Middletown police dispatcher, and 911 call transcripts confirmed that the victim had made a silent 911 call, followed by a second call immediately after the defendant and Moniz left his apartment, indicating that the victim had not led Moniz and the defendant back to his apartment voluntarily.

Furthermore, the defendant's actions upon encountering police officers—ignoring commands to stop, walking away from Pixley and around the corner, and disposing two $100 bills on the sidewalk—supported the inference that the defendant had entered and remained in the victim's apartment with the intent to unlawfully obtain the victim's money. It is reasonable to infer that the defendant disposed of the $200 because it was evidence of the burglary that he did not want to have found on his person. Moreover, the defendant continued walking to round the corner on Main Steet, in defiance of several orders to stop, only to turn back around and to comply after dropping the two $100 bills, which created a strong inference that he did so to dispose of the money without being observed by the police.

Notwithstanding the trial court's restriction of portions of defense counsel's cross-examination of the victim, she was otherwise permitted to conduct cross-examination and to introduce evidence to adequately advance the defense's theory that the victim had fabricated the allegations against the defendant. To demon-

strate the victim's motive to fabricate, defense counsel elicited testimony from the victim that he had been convicted of a felony DUI in 2017 and was on probation. Defense counsel was also permitted to cross-examine the victim about the financial difficulties he faced at the time of the incident. Moniz' testimony provided the basis for the defendant's claim that the victim had stolen a watch from Moniz and offered him money as compensation for the theft. Defense counsel also highlighted many inconsistencies in the victim's statements, including his testimony relating to the amount of money taken and his consumption of alcohol, and that he did not tell the 911 operator or the police that he believed that he may have been drugged, but only made the assertion to medical personnel. By exposing these inconsistencies, defense counsel impeached the victim's credibility, thereby strengthening the defense's theory that the victim had fabricated his allegations. See, e.g., *State* v. *Bermudez*, supra, 341 Conn. 278 (exclusion of testimony was harmless when defense counsel was granted ample opportunity to impeach witness). Moreover, defense counsel's closing argument, which drew from the testimony she had elicited during cross-examination of the victim and direct examination of Moniz, demonstrated that she was able to cogently present the defense's theory that the victim was motivated to fabricate his allegations. See, e.g., *State* v. *Lugo*, 266 Conn. 674, 696, 835 A.2d 451 (2003) (erroneous exclusion of testimony to support defendant's theory of defense was harmless when defense counsel presented theory of defense through other testimony and closing argument).

Additionally, the prosecutor's rebuttal argument, that the defendant had failed to show any motive for the victim to lie, did not compound the harm that the defendant claims he suffered.[10] The prosecutor specifically argued: "What possible motive or reason did [the defense] try to explore through either [the victim's or Moniz'] testimony as to why [the victim] would accuse the defendant . . . of these crimes if it didn't happen? There's no motive presented. You know why? Because they have none, why [the victim] would make it up." The prosecutor further argued: "When you look at all [the evidence] and key here, no motive was ever brought out through the cross-examination or questioning of [the victim] or . . . Moniz as to what motive [the victim] would have [had] to accuse [the defendant] of crimes like this if it didn't happen. No motive was ever presented through their testimony. You know why? I would respectfully submit they have none. They have no motive for him to fabricate that."

The defendant correctly notes that "it [is] significant in evaluating harm to look to see how the state use[s] . . . evidence in its closing argument." *State* v. *Ayala*, 333 Conn. 225, 235, 215 A.3d 116 (2019). Here, the prosecutor was clearly responding to defense counsel's asser-

tion that a motive, in fact, existed—namely, the victim's desire "to get ahead of" the situation by reporting the defendant and Moniz to the police before they could report him for stealing the watch, which could have affected the victim's probationary status. See, e.g., *State* v. *Singh*, 259 Conn. 693, 717, 793 A.2d 226 (2002) ("[t]he state may . . . properly respond to inferences raised by the defendant's closing argument" (internal quotation marks omitted)). The jury, however, would have recognized that the prosecutor's argument that the defense had presented no motive as to why the victim would fabricate his charges was incorrect. The defense did present a motive—the victim's precarious financial situation and desire to get ahead of any allegations about the watch. It would have been more accurate for the prosecutor to argue that the defense had presented no *persuasive* argument as to motive. In any event, the trial court mitigated any potential harm by instructing the jury that statements made by counsel during closing arguments are not evidence and reminding the jury to draw its own conclusions concerning the credibility of witnesses.[11] See, e.g., *State* v. *Daniel W. E.*, 322 Conn. 593, 613, 142 A.3d 265 (2016) ("[t]he jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions" (internal quotation marks omitted)). Importantly, the prosecutor's rebuttal does not change the fact that defense counsel, during her closing argument, relied on the evidence she was able to introduce to make the very argument that the defendant is *now* claiming the trial court's evidentiary rulings precluded him from presenting to the jury.

We cannot conclude that the excluded cross-examination would have had any meaningful impact on the jury's verdict. It is unlikely that testimony regarding the specific conditions of the victim's probation would have made defense counsel's presentation of the defense's theory any more persuasive, as the jury reasonably could have surmised that a probationer would seek to avoid arrest. We have repeatedly stated that "[j]urors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion." (Internal quotation marks omitted.) *State* v. *Abraham*, 343 Conn. 470, 478, 274 A.3d 849 (2022). The notion that a probationer would have been motivated to avoid an arrest—a point that defense counsel was given adequate opportunity to make—was within the jurors' common knowledge. Indeed, defense counsel leveraged this precise intuition in asking the jury, "[w]hat would happen if [the victim] had been arrested and charged with stealing that watch? What would be the consequence to him? Does it make sense that he'd want to get ahead of it?" For the foregoing reasons, we conclude that the defendant has failed to prove that the trial court's restriction on defense counsel's cross-examination of the victim was harmful.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] We granted the defendant's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "Did the Appellate Court properly uphold the trial court's restriction of defense counsel's cross-examination of the complainant about matters relevant to the complainant's motive to fabricate his allegations?" *State* v. *Lanier*, 338 Conn. 910, 910–11, 258 A.3d 1280 (2021). We agree with the state that the certified issue is imprecisely worded in that it presumes to resolve in the defendant's favor the central issue raised by this appeal, the relevance of the line of questioning defense counsel sought to introduce during cross-examination. Accordingly, we reword the certified issue to add "allegedly" before "relevant." See, e.g., *State* v. *Lavigne*, 307 Conn. 592, 594 n.1, 57 A.3d 332 (2012) ("this court may modify certified [issues] to render them more accurate in framing issues presented" (internal quotation marks omitted)).

[2] There was conflicting evidence as to whether the defendant also struck the victim. The victim claimed that both Moniz and the defendant assaulted him. According to Moniz, however, he alone assaulted the victim. Moniz testified that, prior to the defendant's trial, he had pleaded guilty to the assault under the *Alford* doctrine. See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] Dispatch call sheets and testimony from a Middletown police dispatcher presented at trial corroborated the victim's testimony that he had made this 911 call without speaking to an operator.

[4] Moniz' testimony at trial confirmed that the defendant had had two $100 bills on him.

[5] "[I]n a third substitute information [the defendant was charged] with . . . committ[ing] the following crimes: in count one, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (1); in count two, conspiracy to commit robbery in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-135 (a) (1) (A); in count three, robbery in the first degree in violation of § 53a-134 (a) (1); in count four, robbery in the second degree in violation of § 53a-135 (a) (1) (A); in count five, assault in the second degree in violation of General Statutes § 53a-60 (a) (1); and in count six, burglary in the second degree in violation of § 53a-102 (a)." *State* v. *Lanier*, 205 Conn. App. 586, 593–94, 258 A.3d 770 (2021).

[6] The record indicates that the victim was arrested twice while on probation, that he was charged with violation of probation on October 20, 2017, and that he admitted the violation and was resentenced on January 8, 2018. See *State* v. *Lanier*, supra, 205 Conn. App. 596 n.4.

[7] We address two ancillary rulings by the trial court regarding the cross-examination sought by the defendant. First, the trial court evaluated the admissibility of the requested cross-examination under § 6-7 of the Connecticut Code of Evidence, which governs the admissibility of evidence of a prior conviction. Although the trial court's ruling under that section was pertinent to questions about the victim's prior felony conviction, it was inapposite in determining the admissibility of the additional inquiries sought by the defendant. Second, notwithstanding its ruling that the defendant's proffered line of inquiry was inadmissible, the trial court also ruled that the probative value of the proposed cross-examination was outweighed by its prejudicial effect. Given the trial court's determination that the evidence was inadmissible, it was unnecessary for the court to take the additional step of weighing its probative value against any prejudicial effect. Cf. *State* v. *Hill*, 307 Conn. 689, 698, 59 A.3d 196 (2013) ("evidence is admissible . . . if, *first*, it is relevant, and second, its probative value outweighs its prejudicial effect" (emphasis added)); *State* v. *Pappas*, 256 Conn. 854, 887, 776 A.2d 1091 (2001) ("evidence . . . is properly excluded if its prejudicial impact outweighs its probative value, even if it is *otherwise admissible*" (emphasis added; internal quotation marks omitted)).

[8] The sixth amendment right to confrontation is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. See, e.g., *Pointer* v. *Texas*, 380 U.S. 400, 403, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[9] The defendant further asserts that the fact that the jury found him not guilty on five out of the six charges illustrates that it did not find the victim's testimony to be reliable, undermining the strength of the state's case. We are unpersuaded. We have repeatedly recognized that a split verdict does not necessarily signal that the state's case against a defendant is weak but

may instead indicate that a defendant was not prejudiced by the conduct that is challenged as harmful on appeal. See, e.g., *State* v. *David N.J.*, 301 Conn. 122, 154, 19 A.3d 646 (2011) ("[W]e disagree with the defendant's claim . . . that [a] split verdict, acquitting the defendant of [some] charges . . . but convicting him on the other counts, demonstrates the weakness of the state's case and prejudice to the defendant from the impropriety. In the absence of reports of deadlock . . . our cases have relied on split verdicts as evidence that a jury was not so prejudiced . . . that it could not treat the defendant fairly." (Internal quotation marks omitted.)); *State* v. *Long*, 293 Conn. 31, 52–53, 975 A.2d 660 (2009) (jury's finding of not guilty of more serious charge indicated that defendant was not prejudiced).

[10] The defendant has not challenged the prosecutor's remarks on the basis of prosecutorial impropriety.

[11] The trial court instructed the jury: "You should keep in mind that arguments and statements by the attorneys in final arguments or during the course of the case are not evidence. You should not consider as evidence their recollection of the facts nor their personal belief as to any facts or as to the credibility of any witness nor any facts that any attorney may have presented to you in argument from the attorney's knowledge that was not presented to you as evidence during the course of this trial."

————————————————————